**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TIMOTHY M. BENNETT,<br>    626 Forest View Way<br>    Monument, Colorado 80132<br><br>Plaintiff,<br><br>v.<br><br>THE HONORABLE  MARK T. ESPER<br>SECRETARY OF THE ARMY,<br>    101 Army Pentagon<br>    Washington, D.C. 20310-0101<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND PETITION FOR WRIT OF MANDAMUS

Plaintiff Timothy M. Bennett ("Plaintiff") by counsel files this complaint and petition for

writ of mandamus against The Honorable Mark T. Esper, in his official capacity, as Secretary of

the Army ("Defendant"), and in support thereof, Plaintiff states as follows:

### NATURE OF THE ACTION

1.     This complaint for declaratory and injunctive relief and petition for writ of

mandamus seeks for a declaration that the decision of the Army Board for Correction of Military

Records (ABCMR) denying Plaintiff's requested relief to remove certain adverse and derogatory

information from Plaintiff's Official Military Personnel File (OMPF); request for consideration of

promotion by special selection board(s); and extension of mandatory removal date was an abuse

of discretion, arbitrary and capricious and contrary to law or regulation.

2.     This action arises under 28 U.S.C. § 1331 and the Administrative Procedures Act,

5 U.S.C. § 702 *et. seq.* ("APA").

## THE PARTIES

3.     Plaintiff, Timothy M. Bennett, is a retired Lieutenant Colonel that served as an active duty infantry officer for 20 years. He also served as a reservist for 9.5 years.

4.     Defendant, The Honorable Mark T. Esper, in his official capacity, is Secretary of the Army.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and the APA.

6.     Venue is proper in this judicial district as the Defendant is found in this district.

## BACKGROUND

7.     Plaintiff was mobilized on active duty in 2008 with the United States Army Space and Missile Defense Command/Army Strategic Command (USASMDC/ARSTRAT) to serve as an action officer for the G3 (Operations) and G39 as the reserve force development and mobilization officer.

8.     As part of Plaintiff's duties, he was responsible for developing the reserve force structure Army Forces Cyber Command (ARFORCYBER) and ensuring the accurate submission and processing of all mobilization packets for the USASMDC/ARSTRAT G39 section.

9.     In the fall of 2009, Plaintiff discovered mobilization orders that did not match actual assigned duties.  Individual mobilizations under false justifications are improper.

10.    Based on this discovery, an audit of mobilization orders was conducted by the Chief, Internal Review and Audit Compliance, USASMDC/ARSRAT (See Exhibit 1 attached hereto).  The audit found:

a. 12% of the mobilized reservist were not working in support of the mission stated

2

as justification for the mobilization.

   b. At the time of the audit, of the 12%, 7% remained improper and 5% were corrected as a result of Plaintiff's actions.

   c. The auditor found evidence of nepotism as it pertained to the manner reservists were selected for mobilization.

   d. The auditor found that First Lieutenant (1LT) Sara Coy did not mobilize consistent with her orders justification.  Specifically, she was mobilized to work in the Space Brigade intelligence section (S2) but was actually performing duties with USASMDC/ARSTRAT staff in the G39 shop.

  11. The first irregularity found by Plaintiff pertained to 1LT Coy (See Exhibit 2 attached hereto).  1LT Coy's orders justification was to provide intelligence products for the Brigade's forward deployed forces and intelligence reach back support as part of her S2 functions. (*See* ¶ 2 of Exhibit 2.) Due to the serious nature of all the irregularities, a meeting was held between Plaintiff, several senior officers, and enlisted staff.  As a result, the staff determined that 1LT Coy had been improperly mobilized and that she should be released from active duty ("REFRAD").[1]

  12. 1LT Coy filed a complaint against Plaintiff within days of her finding out that his actions were going to cause her to be REFRAD.  Consequently, an informal investigation was directed under the provisions of Army Regulation (AR), 15-6, *Procedures for Investigating Officers and Boards of Officers*, (2 October 2006) to investigate 1LT Coy's allegations.[2]

---

[1] REFRAD is military term commonly referenced as a return from active duty orders to normal drilling reserve status.

[2] AR 15-6 outlines the procedures for a commander to informally investigate matters relating to questions arising within the command sphere of influence.  Often an investigating officer (IO) of commensurate time and grade is appointed by the commander (although boards of officers can be utilized under this authority) to investigate a matter and provide findings and recommendations in accordance with the investigating officer's appointment memorandum. Prior to the commander taking action on the IO's findings and recommendations, it is routed through pertinent staff for input.  If the investigation involves a serious or complex matter, a legal review will be conducted.

13.     For clarity, the investigation and ensuing administrative action process related to this matter can be described in four phases: a) the conduct of the investigation; b) findings and recommendations; c) the legal review; and d) the Commanding General's action.

### a) CONDUCT OF THE INVESTIGATION

14.     Colonel (COL) Shanahan was directed to appoint an IO by Lieutenant General Kevin T. Campbell, Commanding General of U.S. Army Space and Missile Defense Command, Huntsville Alabama.  COL Michele M. Putko was subsequently appointed as IO on or about 30 July 2010.

### b) FINDINGS AND RECOMMENDATIONS

15.     The IO recited Plaintiff's and 1LT Coy's respective roles and assignments within Army Forces Strategic Command as mobilized Soldiers.  (See Exhibit 3 attached hereto). The IO alleged, among other things, that the investigation revealed (See ¶ 3 of Exhibit 3):

     a.  that Plaintiff "paid excessive unwanted attention to 1LT Coy and as a result had an adverse impact on her morale and the command's ability to accomplish its mission";

     b.  the mobilization process of Soldiers within the command was questionable;

     c.  that she found "no credible evidence that supported the creation of a hostile work environment as defined in AR 600-20 or behavior of a sexual nature directed to 1LT Coy by LTC Bennett."

     d.  that she found "no evidence which indicates that LTC Bennett was trying to harass or establish a relationship with 1LT Coy."

     e.  that Plaintiff's actions were mission focused.

     f. that Plaintiff "did not violate any orders, commit conduct unbecoming of an officer or commit sexual harassment."

16.     The IO recommended that the Plaintiff be formally counseled for his excessive unwanted attention paid to 1LT Sara Coy. She also recommended that the no contact order be lifted and that he personally apologize to 1LT Coy for his excessive attention. (See ¶ 4a of Exhibit 3).

### c) LEGAL REVIEW

17.     MAJ Scott G. Gardiner, Deputy Staff Judge Advocate, undertook to write a Legal Review of the AR 15-6 investigative report by COL Putko. (See Exhibit 4 attached).

18.     MAJ Gardiner recommended amending the finding to read: "LTC Bennett violated AR 600-20, paragraph 4-14, by engaging in a prohibited relationship with 1LT Sara Coy." (See ¶ 4 of Exhibit 4). The Legal Review goes on to describe the alleged relationship in sexual terms. It further recommended issuing a General Officer Memorandum of Reprimand (GOMOR). (See ¶ 9 of Exhibit 4).

19.     In a letter dated 16 September 2012, COL Putko stated, "If AR 600-20, para 4-14, is correctly interpreted to mean that a violation must be precipitated by some sort of relationship existing between the two officers, then the term relationship, regardless of how loosely defined, can by no legitimate means be used to describe LTC Bennett and 1LT Coy. 1LT Coy herself never alleged that she was involved in any type of relationship with LTC Bennett." (See Exhibit 5 attached).

20.     It is Plaintiff's contention that the adverse inferences drawn from his attempt to supervise his subordinate, 1LT Coy, were motivated by an attempt to retaliate for his whistleblower efforts to expose the fraudulent mobilization which was ongoing in the Command. (See Exhibit 6 and Exhibit 7 attached).

## d) COMMANDING GENERAL'S ACTION

21.     Based on the substituted findings in the Legal Review, LTG Kevin T. Campbell, the Commanding General, issued a GOMOR, dated October 18, 2010, "for engaging in a prohibited relationship with a female junior officer in violation of paragraph 4-14, Army Regulation 600-20, Army Command Policy." (See Exhibit 8 attached).

22.     LTG Campbell stated that he was considering filing this reprimand in the Plaintiff's Official Military Personnel File (OMPF) and would make a final decision after reviewing Plaintiff's rebuttal.

23.     Plaintiff was not provided with a copy of the critical Legal Review and was, therefore, unable to make a proper rebuttal of the charges against him. The GOMOR was placed in his OMPF.

24.     In a letter dated April 14, 2014, LTG Campbell (Ret) stated that after further review, he did not believe there was evidence supporting a motive outside of mission accomplishment for the Plaintiff's actions and recommended removal of the GOMOR from his file. (See Exhibit 9 attached).

25.     In a letter dated December 17, 2014, LTG Campbell (Ret) stated that additional information suggested that the Plaintiff's actions were undertaken to correct the mobilization process and ensure personnel were mobilized and utilized appropriately. (See Exhibit 10 attached).

26.     In an undated letter, LTG David L. Mann, successor-in-command to LTG Campbell, stated that he had reviewed the report of investigation, dated 30 July 2015, for the AR 15-6 investigation of his predecessor-in-command.  (See Exhibit 11 attached). Specifically, LTG Mann determined that Finding 1, establishing that LTC Bennett engaged in a prohibited relationship in violation of AR 600-20, paragraph 4-14, was erroneous, and set it aside. (See ¶ 2

of Exhibit 11). He further determined that Recommendation 1a, that a GOMOR be issued, was no longer supported by the findings, and set that recommendation aside. (See ¶ 3).

## EFFECT ON CAREER

27.     The Plaintiff had always received highly favorable Officer Evaluation Reports (OERs) prior to this incident and has done so in subsequent years. (See Exhibit 12, Exhibit 13, Exhibit 14, and Exhibit 15 attached). The OER covering the period 11 August 2009 through 10 August 2010, the period prior to receiving the GOMOR, rated him positive on all Army Values and Leader Attributes/Skills/Actions. He was rated "Outstanding Performance, Must Promote" and "Best Qualified." Comments include "LTC Bennett has the potential to succeed in positions of greater responsibility and authority" and "Groom for promotion and schooling." (See Exhibit 16 attached).

28.     Thereafter, a Referred OER covering the period 11 August through 19 November 2010, which did not recommend him for promotion at that time, was prepared as a result of the GOMOR. (See Exhibit 17 attached). This was based on incidents which happened prior to the rating period. The ABCMR, as the only relief granted, removed this Referred OER, covering the three-month period, from his OER.

28.     However, an addendum was prepared on 26 January 2011 covering the period 11 August 2009 through 10 August 2010. The raters stated that they would have given him an unfavorable review if they had known of the adverse information. They would have checked "Unsatisfactory Performance, Do Not Promote," that he did not exhibit the Army Values of honor, integrity, and respect, that "He acted dishonorably by failing to adhere to the Army's publicly declared values of integrity and respect by sexually harassing a female 1LT." (See Exhibit 18 attached). The ABCMR refused to remove this addendum from his OER.

29.    COL Josef Smith (Ret), in a memorandum dated May 25, 2015, states that he was assigned the task of preparing a memorandum of rater modifications to the Plaintiff's OER in January 2011. He requested a copy of the AR 15-6 but was given a "grossly inaccurate" summary instead. His "extremely harsh modification to the OER" was based on this information alone. "The issues presented in the summary are directly and explicitly contradicted in the report of investigation itself."  The report "specifically states he did not do the very things the summary claims he did." COL Smith concludes, "This entire complaint and disciplinary action transpired in a highly irregular and suspicious manner." "The unfavorable personnel actions suffered by LTC Bennett as a result of this are an injustice. The Army should correct this expeditiously by taking every action possible to restore LTC Bennett's career as if this incident had never happened." (See Exhibit 19 attached).

30.    The Plaintiff's career suffered serious repercussions from this miscarriage of justice. He was not selected for promotion to colonel and was not able to compete for the Army War College or seek a battalion command. He was taken off mobilization at SMDC/ARSTRAT and denied further mobilization for two years, and also denied a mobilization in 2012 to Central Command (CENTCOM), which effectively denied him 730 Active Duty Days. Another 400 Active Duty Days were denied based upon his inability to mobilize to Afghanistan due to the flag in his file as result of the GOMOR. Finally, he was not able to secure an assignment out of the Individual Ready Reserve (IRR) for three years.

## PRIOR PROCEEDINGS

32.    The Plaintiff applied to the Department of the Army Suitability Evaluation Board (DASEB) to remove the GOMOR and all allied documents from his OMPF on 5 March 2013. (See Exhibit 20 attached). By a unanimous vote, the DASEB approved removal of the GOMOR, dated

18 October 2010. However, he was notified on 19 November 2014 that the Deputy Assistant Secretary of the Army (DASA)(Review Boards), rejected the Board's decision to remove the GOMOR, on the ground that he had not shown with clear and convincing evidence that the GOMOR was untrue and/or unjust. (See Exhibit 21 attached). The Plaintiff requested that the DASEB reconsider the removal of his GOMOR from his OMPF on 05 March 2015. (See Exhibit 22 attached). On 28 April 2015, the DASEB voted to deny removal of the GOMOR. (See Exhibit 23 attached).

33.     On 18 June 2016, the Plaintiff submitted his Petition to Correct Errors, Injustices and Remove Unfavorable Information from the Official Military Personnel File of LTC Timothy Bennett. (See Exhibit 24 attached). This was within three years of the denial of reconsideration by the DASEB. Appeal to the ABCMR may be made only after all administrative remedies have been exhausted. 32 CFR 581.3; AR 15-185, ¶ 2-5. This includes the DASEB. AR 600-37, ¶ 7-6. The three-year statute of limitations, 10 U.S.C. § 1552(b), therefore, did not begin to run until the final decision of the DASEB. *See Ortiz v. Secretary of Defense,* 41 F.3d 738, 743 (D.C. Cir., 1994). The Board's decision to waive the allegedly untimely filing only to the extent relief is granted, ¶ 1, page 6, is misplaced.

### STANDARD OF REVIEW

34.     A decision of the ABCMR is subject to reversal pursuant to 5 U.S.C. § 706(2)(A) if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Kreis v. Sec'y of the Air Force,* 866 F.2d 1508, 1513 (D.C. Cir 1989), citing *Chappell v. Wallace,* 462 U.S. 296, 303 (1983).

35.     A decision of the ABCMR is arbitrary when it fails to respond to a plaintiff's facially nonfrivolous arguments which could affect the Board's ultimate disposition. *Frizelle v.*

*Slater,* 111 F.3d 172, 177 (D.C. Cir. 1997). An agency decision is owed no deference if it fails to "give a reason that a court can measure…against the 'arbitrary or capricious' standard of the APA." *Kreis,* 866 F.2d at 1514-15.

36.     There is a rebuttable presumption that military administrators discharge their duties correctly, lawfully, and in good faith. *Frizelle,* at 177.

37.     An agency decision is owed no deference where its explanation lacks any coherence and fails the test of reasoned decision making. *Coburn v. McHugh,* 679 F.3d 924, 930 (D.C.C., 2012), citing *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 437 F.3d 75, 77 (D.C. Cir. 2006).

38.     Under the APA, the agency's role is to resolve factual issues to arrive at a decision that is supported by the administrative record, while "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Albino v. United States,* 78 F.Supp.3d 148, 163 (D.D.C., 2015), quoting *Occidental Eng'g Co. v. INS,* 753 F.2d 766, 769 (9th Cir. 1985).  "[T]he agency must explain why it decided to act as it did." *Gilbert v. Wilson*, 292 F.Supp.3d 426, 434 (D. D.C., 2018), quoting *Butte Cty. v. Hogen* , 613 F.3d 190, 194 (D.C. Cir. 2010).

39.     In deciding whether the Secretary's decision is based on substantial evidence, the Court must not base its finding "'merely on the basis of evidence which in and of itself justified [the Board's decision] without taking into account the contradictory evidence or evidence from which conflicting inferences could be drawn.'" *McGrady v. Winter,* 810 F.Supp.2d 281, (D.D.C., 2011), citing *Lakeland Bus Lines, Inc. v. NLRB,* 347 F.3d 955, 962 (D.C.Cir., 2003)(quoting *Universal Camera Corp. v. NLRB,*  340 U.S. 474, 488 (1951)). The Court must examine whether or not the Board has considered all of the evidence before it, and if so, if it has stated why evidence

contrary to the final decision was disregarded or given less weight. *Fuller v. Winter,* 538 F.Supp.2d 179, 186 (D.D.C., 2008).

40.    Where the claims raise issues of procedural fairness, the traditional APA standard of arbitrary and capricious, which is not "unusually deferential," applies. *Wilhelmus v. Geren,* 796 F.Supp.2d 157, 161-62 (D.D.C., 2011), citing *Kreis,* 406 F.3d at 686.

41.    "[W]hen a [military records] correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its [statutory] mandate [under 10 U.S.C. § 1552]. And such a violation, contrary to the evidence, is arbitrary and capricious." *Haselwander v. McHugh,* 774 F.3d 990, 996 (D.C.Cir., 2014), quoting *Yee v. United States,* 206 Ct.Cl. 629 388, 512 F.2d 1383, 1387 (Ct.Cl., 1975).

## DECISION OF THE BOARD

42.    The decision of the ABCMR is not based on substantial evidence but, on the contrary, is based on the systematic misrepresentations of the evidence contained within the record considered by the Board, and ultimately misrepresentation of the evidence by the Board itself. The original investigation, which exonerated the Plaintiff of any sexual misconduct, has repeatedly been misrepresented as instead incriminating him of that very misconduct, and attempts to correct these misrepresentations by those who have mistakenly relied on them have been repeatedly rejected, ultimately by the ABCMR. (See Exhibit 25 attached).

43.    The ABCMR in its Discussion, ¶ 3, page 21, makes the following astonishing statement: "On 8 September 2010, an AR 15-6 IO found during her investigation that the applicant created a ***sexually harassing hostile environment*** and recommended that he be counseled." (Emphasis added). As noted above, ¶ 15, what COL Putko, the IO, specifically found was the exact opposite: "no credible evidence that supported the creation of a ***hostile work environment*** as

11

defined in AR 600-20 or ***behavior of a sexual nature*** directed to 1LT Coy by LTC Bennett."

Plaintiff "***did not … commit sexual harassment***." (See Exhibit 3 attached).

44.     This misstatement of a key piece of evidence on the crucial issue in the case is either the result of intentional falsification or gross negligence. In either event, such an egregious misrepresentation of the record overcomes any presumption of administrative regularity and renders the Board's decision unworthy of deference. The presumption that the members of the ABCMR performed their duties correctly, lawfully, and in good faith is rebutted by their own malfeasance in their handling of the evidence before them. This is not a matter of military judgment but of fundamental procedural fairness. It is arbitrary, capricious, not based on substantial evidence, and contrary to law.

45.     The Board compounds its error in ¶ 12, page 22, by stating that "Review of the applicant's AR 15-6 investigation, the applicant's contentions and argument, and the evidence submitted in support of his application…does not conclusively show that his GOMOR, dated 18 October 2010, contains a material error, inaccuracy, or injustice." The AR 15-6 investigation, of course, exonerated the Plaintiff of sexual misconduct and recommended counseling. It is only the AR 15-6, as misrepresented by the Board, which supports the GOMOR. Once again, this is arbitrary, capricious, not based on substantial evidence, and contrary to law.

46.     A further misrepresentation of the AR 15-6 is found in the "grossly inaccurate" summary given to COL Smith which formed the basis of his memorandum which in turned resulted in the "extremely harsh modification to the OER" for the period which included the alleged incident. The exculpatory report was made to appear incriminating with dire consequences for his career. Rather than taking every effort to correct this injustice, as COL Smith recommended, the Board instead cited the "properly filed contested addendum to the OER" as grounds for not

recommending relief, ¶ 16, page 23, even though it acknowledges, ¶ 8, page 22, that "the applicant's former rating chain stated they would not have furnished an addendum to the OER if they were informed of the specifics within the AR 15-6 investigation." This was arbitrary, capricious, not based on substantial evidence, and contrary to law.

47.     The overriding misrepresentation of the original investigation, however, is the legal review by MAJ Gardiner which critically rewrote COL Putko's report to find a prohibited sexual relationship between LTC Bennett and 1LT Coy and which recommended a GOMOR be issued. The Plaintiff was refused a copy of the legal review and thus was unable effectively to refute the false charges contained therein. As a result, the GOMOR was placed in his personnel file. The Board failed to address Plaintiff's argument that this was a denial of due process. Failure to do so was arbitrary, capricious, not based on substantial evidence, and contrary to law.

48.     The Board dismisses the letters of support from LTG Campbell as highlighting "the applicant's actions to ensure USAR personnel … were properly mobilized." ¶ 9, page 22. Actually, only LTG Campbell's second letter dealt with that topic specifically. What he was concerned with was refuting the implication that LTC Bennett was sexually motivated in his interactions with 1LT Coy. The legal review was written for LTG Campbell's benefit and served as the basis for his GOMOR. Surely, he was in the best position to reconsider the accuracy of the allegations made in that review, which became his own substituted findings, and the appropriateness of issuing the GOMOR which MAJ Gardiner had recommended.

49.     There was no direct evidence of sexual misconduct. No one testified to seeing or overhearing LTC Bennett and 1LT Coy engaging in sexual or romantic or even suggestive behavior. There were no emails or text messages of an erotic nature. No compromising photographs were ever forthcoming. All evidence was of attention paid by a superior officer to a

junior officer. The sole issue was the nature of the interaction, *i.e.*, whether it was sexually motivated, or motivated by professional, military concerns. LTG Campbell determined that he had originally been misled by the legal review into believing that the Plaintiff was sexually motivated. After careful reconsideration, he revised his assessment and rejected the substituted findings in the legal review by MAJ Gardiner in favor of the original findings of COL Putko. The Board failed to provide any rational basis for discounting LTG Campbell's reconsideration of his own evaluation. Failure to do so is arbitrary, capricious, not based on substantial evidence, and contrary to law.

50.     Furthermore, LTG Mann, acting in his official capacity as successor-in-command, set aside the finding in the legal review that LTC Bennet had engaged in a prohibited relationship as erroneous and set aside the recommendation for the GOMOR as no longer supported. Hence, he had already conclusively determined that "the allegations of sexual harassment behaviors addressed by the Deputy SJA during the legal review were incorrect or false." In a legal sense, therefore, they were no longer part of the record. The Board erred in even considering them. The legal review, rescinded by LTG Mann, is not substantial evidence.

51.     The Board did not address the Plaintiff's underlying argument that the false allegations against him were the result of retaliation for his exposure of the fraudulent mobilization scheme which was ongoing in the Command, other than to refer the matter to the Inspector General. 1LT Coy was the first case to be uncovered, and she was the focus of his investigation. It was immediately after she learned she would be deactivated as a result of his efforts that she made the accusation of hostile work environment. 1LT Coy served as a lightning rod for the personnel involved in the illegal activity to target LTC Bennett with false charges which would ruin his career.  Failure to address this crucial issue was arbitrary, capricious, not based on substantial evidence, and contrary to law.

14

52.     The Board dismissed Plaintiff's claim that due to the derogatory information in his record, he was denied the opportunity to receive mobilization orders that would have entitled him to an additional 1,130 retirement point. The Board acknowledges that he had mobilization orders revoked twice after the GOMOR was issued, but without explanation discounts the letter from COL Michael S. Healy, Senior Reserve Advisor at USASMDC/ARSREAR, who had personal knowledge of the impact the GOMOR had on Plaintiff's military career and assignment, and who specifically stated that "As a direct result of the 19 October 2010 GOMR, LTC Bennett was denied remobilization for up to two years (24 months)." (See Exhibit 26 attached). The Board further states that "Issuing of a mobilization order does not constitute proof that he would have departed for and completed any tours entitled him to 1,130 retirement points." On the contrary, as an officer with an outstanding record, LTC Bennett is entitled to a presumption that he would have successfully completed the assigned tours of duty and received the appropriate retirement points. The Board offers no evidence or argument to overcome this presumption. Failure to do so is arbitrary, capricious, not based on substantial evidence, and contrary to law.

53.     In view of the highly favorable OERs which LTC Bennett received both before the defamatory addendum and after, in which is invariably recommended for promotion, and in one instance is rated as already performing at an O-6 level, it is scarcely a matter of speculation that he was passed over for promotion as a result of the GOMOR he received from LTG Campbell, which LTG Campbell himself has subsequently repudiated. The Board erred, not only by failing to remove the addendum from his OER, but in failing to recommend that he be considered for promotion by an SSB, for each year he was eligible for promotion to Colonel (06),  on the basis of an obvious erroneous non-consideration or material error and that the mandatory removal date (MRD) be extended. Failure to do so is arbitrary, capricious, not based on substantial evidence,

and contrary to law.

## FIRST CLAIM FOR RELIEF
## ADMINISTRATIVE PROCEDURE ACT

Plaintiff realleges and incorporates by reference he allegations contained in paragraphs 1 through 53 above, as if fully set forth here.

The ABCMR's decision of October 24, 2017 contained manifest error and was clearly erroneous because this decision made conclusions that were either contradicted or not supported by the record. Accordingly, these decisions were arbitrary, capricious, and abuse of discretion, or otherwise contrary to law and must be set aside under the Administrative Procedures Act, 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays the Court for the following relief:

1. Declare that the ABCMR's decision of October 24, 2017 was arbitrary and capricious, not based on substantial evidence, or otherwise contrary to law in the following respects:

   a. Failure to remove the General Officer Memorandum of Reprimand (GOMOR) dated 10 October 2010 from Plaintiff's Official Military Personnel File (OMPF);

   b. Failure to remove the addendum dated 26 January 2011 to his Officer Evaluation Report (OER) covering the period 11 August 2009 through 10 August 2010.

   c. Failure to remove any other adverse information and/or recording arising from this incident from his OMPF.

   d. Failure to restore lost retirement points.

    e.  Failure to determine that Plaintiff was erroneously passed over for promotion based on adverse information in the OMPF and OER.

    f.  Failure to determine that his mandatory removal date (MRD) be extended.

2. Issue a writ of mandamus instructing the Secretary of the Army to:

    a.  reinstate Plaintiff with an MRD extension;

    b. convene a Special Selection Board for each year that Plaintiff was eligible to consider the promotion of the Plaintiff to Colonel;

    c. remove all the aforementioned negative information mentioned herein from Plaintiff's OMPF; including without limitation the GOMOR resulting OER.

3. Award Plaintiff costs and reasonable attorney's fees as provided in the Equal Access to Justice Act, 28 U.S.C. § 2412; and

4. Grant such other and further relief as may be just and proper under the circumstances.

Dated:

                        Respectfully Submitted,

                        **DUNLAP BENNETT & LUDWIG, PLLC**

                        _____/s/_____

                        David Ludwig (D.C. Bar No. 975891)
                        DUNLAP BENNETT & LUDWIG PLLC
                        1717 Pennsylvania Ave. NW Ste. 1025
                        Washington, District of Columbia 20006
                        Phone: (202) 316-8558
                        Fax: (202) 318-0242
                        dludwig@dbllawyers.com
                        *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing Complaint

was served via first class mail postage-prepaid, upon the defendant:

> The Honorable Mark T. Esper
> Secretary of the Army
> 101 Army Pentagon
> Washington, D.C. 20310-0101

> _____/s/_____
> David Ludwig (D.C. Bar No. 975891)
> DUNLAP BENNETT & LUDWIG PLLC
> 1717 Pennsylvania Ave. NW Ste. 1025
> Washington, District of Columbia 20006
> Phone: (202) 316-8558
> Fax: (202) 318-0242
> dludwig@dbllawyers.com
> *Counsel for Plaintiff*