## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TIMOTHY M. BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-0131 (ABJ) |
| | ) | |
| CHRISTINE WORMUTH, | ) | |
| *Secretary of the Army*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

Plaintiff Timothy M. Bennett brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq*., against Christine Wormuth,[1] the Secretary of the Army, in her official capacity, alleging that the Army arbitrarily and capriciously denied plaintiff's request to correct his military record.  Am. Compl. [Dkt. # 35] ¶¶ 1–4.

Plaintiff is a retired Lieutenant Colonel ("LTC") who served as an active duty infantry officer for twenty years, and as a reservist for nine and a half years.  Am. Compl. ¶ 3.  In 2008, plaintiff was mobilized on active duty with the United States Army Space and Missile Defense Command/Army Strategic Command at Peterson Air Force Base in Colorado.  Am. Compl. ¶ 7; AR 1108[2].  During this period of active duty, First Lieutenant Sara Coy ("1LT Coy") filed a complaint with the Inspector General on June 11, 2010, alleging that plaintiff had been harassing

---

1  The amended complaint names former Acting Secretary of the Army John E. Whitley as the defendant in this case.  Pursuant to Federal Rule of Civil Procedure 25(d), his successor, Secretary Christine Wormuth, is automatically substituted as the new defendant.

2  The parties filed the 199-page administrative record in this case.  Admin. R. [Dkt. # 47] ("AR").  For ease of reference, the Court cites to the Bates numbers in the bottom right-hand corner of each page of the record.

her since November 2009.  AR 426.  After the Army conducted an informal inquiry and an investigation under Army Regulation 15–6, plaintiff received a Reprimand on October 18, 2010, for engaging in a prohibited relationship with a female junior officer in violation of Army Regulation 600–20 ¶ 4–14.  AR 1244.  On January 26, 2011, plaintiff's supervisors sent addenda to the Army Human Resources Command to modify their previously submitted Officer Evaluation Report ("OER") assessing plaintiff's performance from August 2009 to August 2010 to reflect these findings.  AR 1085.  Plaintiff petitioned the Department of the Army Suitability Evaluation Board ("DASEB") in 2013 and 2015 to remove the Reprimand from his personnel file, but the DASEB denied both petitions.  *See* AR 124, 686, 691, 793.

On June 25, 2016, plaintiff filed a petition with the Army Board for Correction of Military Records ("ABCMR" or the "Board") to remove the Reprimand, addenda, and any related negative information from his Official Military Personnel File ("OMPF").  AR 619.  He also requested that the ABCMR consider him for promotion, extend his mandatory removal date, and grant him "lost" retirement points.  AR 619.  Plaintiff first brought this action on January 18, 2019, after the ABCMR denied his petition.  Compl. [Dkt. # 1].  On June 10, 2019, this Court granted a Joint Motion for Voluntary Remand and Stay of Proceedings, and the ABCMR reconsidered its ruling, but again denied plaintiff's request.  *See* Order Granting Joint Mot. for Voluntary Remand and Stay of Proceedings [Dkt. #14] ("Remand Order") at 1; AR 18–22.  On May 3, 2021, plaintiff filed an amended complaint alleging that the ABCMR's denial of his request on remand was arbitrary and capricious.  Am. Compl. ¶ 1.

The parties have filed cross-motions for summary judgment.  *See* Pl.'s Mot. for Summ. J. [Dkt. # 40] ("Pl.'s Mot."); Def.'s Cross Mot. for Summ J. and Opp. to Pl.'s Mot. [Dkt. # 41] and Mem. in Supp. of Def.'s Mot. [Dkt. # 41-1] ("Def.'s Mot."); *see also* Pl.'s Opp. to Def.'s Mot. and

Reply in Supp. of Pl.'s Mot. [Dkt. # 44] ("Pl.'s Reply"); Def.'s Reply in Supp. of Def.'s Mot. [Dkt. # 45] ("Def.'s Reply").  After reviewing the parties' motions, the administrative record, and the relevant authorities, the Court will grant defendant's cross-motion for summary judgment, and plaintiff's motion for summary judgment will be denied.

## BACKGROUND

### 1LT Coy's Complaint and Informal Inquiry

On November 7, 2008, plaintiff, then a LTC in the U.S. Army Reserve, was mobilized to active duty with the United States Army Space and Missile Defense Command/Army Strategic Command.  AR 1108.  The Army extended his period of active duty through November 19, 2010.  AR 1104.  During his active duty, plaintiff first served as the Current Operations Officer for the G3 Operations Division, and then became the Reserve Integration Chief for the G39 Information Operations Division.  AR 1091.

On June 11, 2010, 1LT Coy filed a complaint with the Inspector General, alleging:

> LTC Timothy Bennett has been harassing me since November of 2009. He has been instructed by several individuals, including other LTCs to leave me alone, but he continues to contact me at work and on my cell. He makes excuses to talk to me and instructs me to do tasks that are outside the realm of my position. Even though he has no supervisory role over me, he constantly emphasizes his perceived control over my career, implying that if I do not do everything he tells me to do, it will have adverse effects on my position, my military career or my ability to stay on orders to do my job.

AR 426.  On June 17, 2010, the Inspector General appointed an inquiry officer ("IO") to conduct an informal inquiry into the allegations that plaintiff created a hostile work environment for 1LT Coy "by repeatedly giving her unsolicited attention in violation of [Army Regulation] 600-20." AR 424.  On June 28, 2010, the IO issued a memorandum regarding the inquiry, finding that plaintiff's behavior toward 1LT Coy "placed physical and emotional stress on 1LT Coy" and "was inappropriate and created a hostile work environment for her."  AR 429–30.

3

The IO described how plaintiff's "unwelcomed daily visits to 1LT Coy (up to eight times a day)" from September 2009 through June 2010 disrupted the work of 1LT Coy and others.  AR 428, 430.  1LT Coy has stated that, "I feel like he's stalking me at work," "I'd get anxiety so bad I just want to run," and "[h]e makes this place unbearable to work."  AR 429.  During an exercise in Hawaii in June 2010, 1LT Coy "felt physically threatened" when plaintiff picked her up in his rental car and "faulted 1LT Coy for hi[s] not being able to speak to her back at [their station]."  AR 429.  1LT Coy reported that she "was scared and 'was holding on to the door handle,' ready to jump out of the car."  AR 429.  While 1LT Coy stated that she had not been sexually harassed or assaulted, she did state that plaintiff "brought the subject of sex up twice to her," including telling her that her co-workers "were making inappropriate comments about her [and] that a number of them had come up to him and said that they wanted to have sex with her."  AR 430.  The IO cited corroborating statements from other officers, including:

- In the fall of 2009, Deputy Commander Timothy Cassibry restricted plaintiff from the brigade area where 1LT Coy worked, and the other brigade personnel "began annotating how many times [plaintiff] visited."  AR 428.  LTC Cassibry eventually decided to send 1LT Coy to the G-2 section "to keep her from working directly for [plaintiff] based on his . . . previous behavior involving 1LT Coy."  AR 429.

- In November 2009, Daniel Rupp, an officer in the G-2 section, confronted plaintiff about his "constant and disruptive visits to 1LT Coy" and told plaintiff "to leave her alone."  AR 429.  Rupp also "recommended to 1LT Coy that she maintain a journal documenting [plaintiff's] interaction [sic] with her."  AR 429.

- In March 2010, LTC Peter Molik told plaintiff to "'desist' from his excessive attention paid to 1LT Coy" and asked another Deputy to "counsel [plaintiff] to distance himself from 1LT Coy."  AR 429.

- 1LT Coy's supervisor, Jesus Losoya, observed that when asked to recount her experiences with plaintiff, 1LT Coy was "physically disturbed, her neck broke out with red splotches and at times she was crying."  AR 429.

- LTC Cassibry's sworn statement noted that "[o]n a recent exercise," he received reports that plaintiff "tried to order LT Coy to ride with him in his rental car, be placed on his rental car agreement, and to stay at the same hotel as [plaintiff] was staying."  AR 1291.

4

He also stated that at least three Army officers have raised concerns with him regarding plaintiff's conduct toward 1LT Coy.  AR 1291.

The IO found that plaintiff "paid excessive personal attention to 1LT Coy's" work and professional development, which "became increasingly unprofessional and abusive" and was "clearly inappropriate given the rank disparity."  AR 430.  Plaintiff "persistently sought out 1LT Coy even after being told by LTC Cassibry, LTC Molik, and Mr. Rupp to stay away from her," placing "undue emotional stress on 1LT Coy" and making work a "miserable place for her."  AR 430.  The IO emphasized that this excessive attention was "not typical or appropriate" for a senior officer, especially since 1LT Coy never worked under plaintiff's supervision.  AR 430.  The IO recommended that the Army conduct a more formal investigation under Army Regulation 15–6. AR 431.  In addition, the IO recommended that the Commander issue a "no contact" order to keep plaintiff away from 1LT Coy.  AR 431.  On August 2, 2010, Lieutenant General Kevin Campbell approved the IO's findings and adopted the recommendations for an Army Regulation 15–6 informal investigation and the "no-contact" order.  AR 422.

### Army Regulation 15–6 Investigation and Legal Review

On July 30, 2010, the Army appointed Colonel Michele Putko as the Investigating Officer to conduct the Army Regulation 15–6 informal investigation.  AR 411.  The report of the investigation, issued September 8, 2010, determined that plaintiff "paid excessive unwanted attention to 1LT Sara Coy and as a result, had an adverse impact on her morale and the command's ability to accomplish its mission," AR 720, which was a "a prohibited relation in violation of AR 600-20, *Army Command Policy*, Para 4-15(5)."  AR 722.  The report detailed further findings, including that 1LT Coy "would get anxiety if [plaintiff's] name was mentioned, find the nearest staircase or hallway to escape passing him, leave work at different times to avoid routine, and stopped wearing make-up and going to the gym," and that the "excessive amount of attention"

5

occurred "both in Hawaii and in garrison."  AR 721.  However, IO Putko found no evidence of "the creation of a hostile work environment as defined in [Army Regulation] 600-20 or behavior of a sexual nature directed to 1LT Coy by [plaintiff]," or that plaintiff had been issued a no contact order before July 30, 2010.  AR 720.   As a result of these findings, IO Putko recommended that plaintiff "be formally counselled for his excessive unwanted attention paid to 1LT Sara Coy," the Army lift the no contact order, and plaintiff "personally apologize" to 1LT Coy.  AR 723.  IO Putko also recommended that 1LT Coy "receive professional counseling to help her overcome her feelings of being unsafe in the workplace."  AR 723.

Deputy Staff Judge Advocate Scott Gardiner conducted a legal review of the Army Regulation 15–6 investigation and issued a memorandum on October 4, 2010, stating that the investigation complied with legal requirements and did not contain any legal errors.  AR 637.  However, the Judge Advocate found that some of the IO's findings were not supported by sufficient evidence, and he issued amended findings and recommendations.  AR 638.  First, the Judge Advocate found that the findings should be amended to state that plaintiff "violated [Army Regulation] 600-20, paragraph 4-14, by engaging in a prohibited relationship with [1LT Coy]."  AR 638.  Specifically, plaintiff's actions "qualif[ied] as engaging in a prohibited relationship because:  (1) he was or appeared to be partial to 1LT Coy; (2) [he] improperly used or appeared to use his rank for personal gain; (3) [he] was or was perceived to be exploitative or coercive in nature; and (4) [ ] he created an adverse impact on discipline, authority, morale, and the command's ability to accomplish its mission."  AR 638.  The legal review cited to sworn statements from 1LT Coy's coworkers in the 1st Space Brigade S2 shop ("S2") who "began checking to see if the 'coast was clear' before [1LT Coy] would leave her office," described plaintiff's "concern with 1LT Coy as 'unprofessional' and as a 'fixation,'" and stated that "[m]embers of the S2 perceived that

6

[plaintiff] had inappropriate motives for seeking out 1LT Coy."  AR 638.  Judge Advocate Gardiner also stated that any conclusions the IO reached that plaintiff's actions during the Hawaii exercise were "relatively benign and motivated by official military reasons" were "potentially flawed" because they "eliminate[d] the context for his subsequent actions," emphasizing the importance of analyzing plaintiff's behavior as a "continuous course of conduct."  AR 639.

Judge Advocate Gardiner also recommended removing the finding that there was insufficient evidence that supported "behavior of a sexual nature directed to 1LT Coy" by plaintiff.  AR 642.  He found there was evidence to substantiate these allegations because the "statements from 1LT Coy suggest there may have been a mild form of sexual harassment" and evidence did not show that plaintiff "acted towards any other officer as he acted towards 1LT Coy."  AR 643.  His legal review explained that "repeated offensive comments or gestures of a sexual nature constitute sexual harassment," and it cited the sexual comments plaintiff made to 1LT Coy on various occasions, as well as 1LT Coy's statement that between October and November 2009, plaintiff "instructed her to tell everyone she was engaged."  AR 643.

Judge Advocate Gardiner also amended the findings about the lack of a no contact order prior to July 30, 2010 to add that "there is strong circumstantial evidence that [plaintiff] was instructed or counseled to avoid his continued interaction with 1LT Coy."  AR 644.  His legal review noted that [t]he fact that such guidance and advice existed and was repeatedly ignored by [plaintiff] is evidence of the unreasonableness of his actions towards 1LT Coy."  AR 644.  Finally, Judge Advocate Gardiner recommended that plaintiff be issued a General Officer Memorandum of Reprimand ("GOMOR") for violating Army Regulation 600–20 and that the no contact order issued to plaintiff should remain in effect until he was demobilized from his present tour.  AR 645.

**The Reprimand**

On October 18, 2010, the Army Regulation 15–6 appointing authority approved the amended findings and recommended that plaintiff receive a GOMOR and that the no contact order stay in effect.  *See* AR 394–97.  On the same day, Lieutenant General Campbell issued plaintiff a Reprimand "for engaging in a prohibited relationship with a female junior officer" in violation of Army Regulation 600–20.  AR 158.  The Reprimand stated,

> Over an extended period, and on divers [sic] occasions between October 2009 and June 2010, you engaged in a pattern of showering unwanted attention on a female junior officer that was excessive, inappropriate and disruptive. Your extensive visits to the Lieutenant were so frequent and disruptive that efforts were made to prevent your access to the officer and her workplace. After a brief suspension of your inappropriate attentions, you resumed your inappropriate behavior during a joint exercise in Hawaii where your actions came to the attention of several Naval Officers who were highly critical of your behavior.

AR 158.  The Reprimand noted that plaintiff's "continuous and excessive attention" was "detrimental to the affected officer, her unit and this command."  AR 158.  It further stated that the Reprimand was "imposed as an administrative measure and not as a punishment," and that plaintiff would have the opportunity to file a rebuttal before Lieutenant General Campbell filed the Reprimand in his Official Personnel Military File ("OPMF").  AR 158.  On November 16, 2010, plaintiff submitted a rebuttal to the Reprimand, arguing that he has never had "any type of personal relationship" with 1LT Coy and that there was no evidence that his actions caused an "adverse impact on discipline, authority, or the ability of the command to complete the mission."  AR 1247–48.  Plaintiff also stated that he never received guidance to avoid contact with 1LT Coy prior to the no contact order.  AR 1249.  On December 8, 2010, the Lieutenant General Campbell directed the Reprimand to be filed in plaintiff's OPMF.  AR 1245.

**Evaluation Addendum**

Following the Reprimand, plaintiff's rater and senior rater submitted addenda to the Army Human Resources Command seeking to modify plaintiff's Officer Evaluation Report ("OER") for August 2009 through August 2010.  *See* AR 1085, 1087.  The rater explained that he was "unable [to] reference" the allegations lodged by 1LT Coy at the time of filing the evaluation from that period because this "conduct was not verified until the completion of a 15-6 investigation."  AR 1085.  The rater proposed that plaintiff's OER be amended to indicate that plaintiff "acted dishonorably by failing to adhere to the Army's publicly declared values of Integrity and Respect by sexually harassing a female 1LT."  AR 1085.  The senior rater's addendum also noted that plaintiff's "extended pattern of behavior raises serious questions of his sound judgment and respect for others," and stated that he should not be promoted or selected for leadership positions. AR 1087.

**Department of the Army Suitability Evaluation Board Actions**

On March 5, 2013, two years and three months after the Reprimand was imposed, plaintiff petitioned the Department of the Army Suitability Evaluation Board ("DASEB") for removal of the Reprimand from his personnel file.  AR 124.  A year later, on April 14, 2014, he submitted a letter from the then-retired Lieutenant General Campbell, the original authority who imposed the Reprimand, recommending that the Reprimand be removed from plaintiff's file. AR 134.  Lieutenant General Campbell stated that "after an additional review of the [Army Regulation] 15–6 report, the investigating officer's additional input, and a discussion with [plaintiff]," he did not believe there was evidence "supporting a motive outside of mission accomplishment" for plaintiff's actions.  AR 134.  Plaintiff also included a memorandum from Retired Colonel Putko, the officer who conducted the Army Regulation 15–6 investigation, to

"clarify [her] interpretation of [Army Regulation] 600-20 and the use of the term 'relationship.'" AR 135. Putko stated that if Army Regulation 600–20 ¶ 4–14 "is correctly interpreted to mean that a violation must be precipitated by some sort of relationship existing between the two officers, then the term relationship, regardless of how loosely defined, can by no legitimate means be used to describe [plaintiff] and 1LT Coy." AR 135.

On August 21, 2014, the DASEB unanimously determined that, based on the evidence, the Reprimand was "untrue and unjust" and should be removed from plaintiff's military record. AR 118. However, on November 19, 2014, the Deputy Assistant Secretary of the Army Review Board rejected this decision, finding that plaintiff's behavior "violated Army regulations, policies, and protocols, and that he failed to show "with clear and convincing evidence that the [Reprimand] was untrue and/or unjust." AR 794.

On March 5, 2015, plaintiff again applied to the DASEB to remove the Reprimand. *See* AR 691–94. He included a second letter from Lieutenant General Campbell recommending that the Reprimand be removed based on additional information illustrating that plaintiff's actions "were taken in the best interest of the organization" but "had an unintentional negative impact on 1LT Coy." AR 696. On April 9, 2015, the DASEB unanimously decided again that the evidence "did not clearly and convincingly establish the [Reprimand] was untrue or unjust, and as a result the presumption of regularity applied." AR 16; AR 686. On April 28, 2015, the DASEB voted to deny removal of the Reprimand. AR 684.

### First ABCMR Decision

On June 25, 2016, plaintiff filed a petition with the ABCMR to remove the Reprimand, the addenda, and "any other adverse information and/or record arising from this incident" from his Official Military Personnel File. AR 619. He also requested that the ABCMR consider him for

promotion to Colonel, extend his mandatory removal date, and grant him 1130 "lost" retirement points based on a denial of two years of mobilization due to the Reprimand. AR 619. Plaintiff included a memorandum from Lieutenant General David Mann, Lieutenant General Campbell's predecessor, stating that in his view, the finding "establishing that [plaintiff] engaged in a prohibited relationship in violation of [Army Regulation] 600-20, paragraph 4-14, was erroneous" and should be set aside. AR 673.

On October 24, 2017, the Board granted plaintiff partial relief. AR 588. It recommended removing plaintiff's evaluation covering August 11, 2010, through November 19, 2010, and "replacing it with a memorandum of non-rated time." AR 588. However, the Board found that even if it removed the evaluation from plaintiff's file, he "would still fall short of having a reasonable chance of being recommended for promotion due to the properly filed contested addendum to the OER" covering August 11, 2009 through August 10, 2010. AR 611.

The Board denied the remaining requested relief. AR 588. In reviewing the Army Regulation 15–6 investigation and all of the evidence submitted with plaintiff's application, the ABCMR held the evidence "d[id] not conclusively show that his GOMOR. . . contain[ed] a material error, inaccuracy, or injustice." AR 610. Additionally, the ABCMR found that plaintiff's promotion selection status was "uncertain with respect to his consideration for promotion to [Colonel]" by 2013 or later years, as well as to subsequent promotions. AR 610. Under the governing regulations, an officer will not be reconsidered for promotion by a special selection board "unless there was an erroneous non-consideration or material error" in the record, and there was no evidence supporting the existence of the necessary error in plaintiff's case. AR 611. The ABCMR also found that there was no evidence showing that the Reprimand caused plaintiff's

mobilization orders to be revoked, nor evidence showing that plaintiff would have completed any tours "entitling him to 1,130 retirement points." AR 611.

### Original Complaint and Remand to the ABCMR

Plaintiff filed the original complaint in this case on January 18, 2019, challenging the Board's decision. *See* Compl. On June 10, 2019, the Court granted the parties' joint motion for voluntary remand and stay of proceedings, remanding the case to the ABCMR to issue a new decision on plaintiff's request to correct his military records and other requested relief. Remand Order at 1. The Court directed the Board to answer the following questions:

a.  Whether Plaintiff was denied notice of the *substituted* findings and recommendations drafted by MAJ Gardiner (*see* Ex. 4 to ECF No. 1) and presented to LTG Campbell prior to Plaintiff's rebuttal to the Investigating Officer's ("IO") findings and recommendations.

b.  If the ABCMR finds that Plaintiff did not receive notice of the substituted findings and recommendations prior to his rebuttal and the ensuing issuance of the GOMOR, was this a material error or injustice in the filing of the GOMOR in Plaintiff's AMHRR? It is agreed and accepted by the parties that such substituted findings and recommendations as incorporated within the GOMOR did not constitute attorney-client privileged communications.

c.  If the ABCMR upholds the substituted findings and recommendations, what evidence and legal authorities support the substituted findings and recommendations?

d.  If the ABCMR upholds the substituted findings and recommendations, what evidence did the ABCMR rely on to state, in its prior record of proceedings in this matter, that "[o]n 8 September 2010, an [Army Regulation] 15-6 IO found during her investigation that the applicant created a sexually harassing hostile environment and recommended that [Plaintiff] be counseled…" (*see* Ex. 25 to ECF No. 1) considering the IO specifically stated to the contrary, to wit: "…(a) no credible evidence that supported the creation of a hostile work environment as defined by [Army Regulation] 600-20 or behavior of a sexual nature directed to LT Coy by LTC Bennett, and (b) LTC Bennett did not violate any orders, commit conduct unbecoming of an officer or commit sexual harassment." (*See* Ex. 3 ECF. No. 1).

e.    Whether the ABCMR upholds LTG Campbell's use of the term "prohibited relationship" in the GOMOR (a) in light of the requirement that as used in Army Regulation 600-20, a "prohibited relationship" must be predicated on a "relationship" as the term is "naturally given [meaning] in ordinary usage[,]" *see U.S. v. Oramas*, No. 20051168, 2007 CCA LEXIS 588, at *6-7, 2007 WL 7271934, at *2 (Army Ct. Crim. App. Mar. 29, 2007), and (b) in light of the fact that the IO found "no evidence to indicate that LTC Bennett was trying to harass or establish a relationship with LT Coy." (*See* Ex. 5 to ECF No. 1).  Further, did the ABCMR consider the IO's subsequent statement that "LT Coy herself never alleged that she was involved in any type of relationship with LTC Bennett." *Id.*

f.    Whether the ABCMR considered the subsequent findings made by LTG Campbell showing that he did not believe that Plaintiff had any motive outside of mission accomplishment in his actions with respect to LT Coy and further recommended that his GOMOR be removed. (*See* Ex. 9 to ECF No. 1).

g.    Whether the ABCMR considered LTG Mann's, as successor-in-command to LTG Campbell, subsequent determination setting aside the finding that Plaintiff engaged in a prohibited relationship and further setting aside the GOMOR as not supported by the facts.  (*See* Ex. 11 to ECF No. 1).

h.    Whether the ABCMR considered the addendum to the OER covering the rating period of August 11, 2009 to August 10, 2010 and describing Plaintiff's actions as "dishonorable" and as "sexually harassing" to be erroneous in light of the forgoing, the Commanding General's and his successor's subsequent findings. (*see* Ex. 18 to ECF No. 1), and the author of the addendum's subsequent petition for removal of the addendum, in which he stated that it was predicated on a "grossly inaccurate summary" of the investigation (*see* Ex. 19 to ECF No. 1).

Remand Order at 2–3.

On February 7, 2020, the Board issued its second decision unanimously denying plaintiff's requested relief.  AR 22.  The Board considered the plaintiff's military records, the previous findings and recommendation related to the case, the arguments and documents submitted by both parties, and the complete evidentiary record and "determined the overall merits of this case [were] insufficient as a basis for correction" of plaintiff's records.  AR 22.

First, while the Board was unable to determine if plaintiff "was denied timely notice of the substitute findings and recommendations" drafted by Judge Advocate Gardiner, the Board found that even if the applicant had been denied notice, there was "no material error or injustice" related to the filing of the Reprimand. AR 18. The Board stated that the Reprimand "itself articulates relatively clearly the misconduct for which the [plaintiff] was admonished, and the articulated misconduct is mirrored in the many documents and sworn statements that comprised the [Army Regulation] 15-6 Investigation." AR 18. Any untimely notice was therefore harmless. AR 18.

The Board also found that plaintiff failed to establish "by a preponderance of evidence that the substituted findings and recommendations should be amended." AR 18. While plaintiff argued that for a prohibited "relationship" to exist, the "interactions between individuals must be perceived as consensual and benign by each party," the Board explained that the regulation in effect during the relevant time period deemed the following conduct to be objectionable:

> those interactions between Soldiers of different rank which cause actual or perceived partiality or unfairness; involve, or appear to involve, the improper use of rank or position for personal gain; are, or perceived to be, exploitative or coercive in nature; or which create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the command to accomplish its mission.

AR 18–19. The Board found "that the record is replete with evidence establishing that the [plaintiff] engaged in, or attempted to engage in, a prohibited relationship as defined by [Army Regulation] 600-20, para. 4-14." AR 19. The Board explained that the "key inquiry is whether the documentary and testimonial evidence of the [Army Regulation] 15-6 investigation supports a finding that the [plaintiff] engaged in conduct proscribed by [Army Regulation] 600-20, para. 4-14." AR 19. Therefore, the fact that the IO never found that plaintiff was "trying to harass or establish a relationship" with 1LT Coy was not controlling, "nor [was] the fact that 1LT C never alleged that she was involved in any type of relationship" with plaintiff.

AR 19.  The Board maintained that there was "ample evidence" to show that plaintiff had engaged in proscribed conduct, including that plaintiff's "actions relative to 1LT C[oy] made her uncomfortable," plaintiff's initiation of a discussion "as to whether 1LT C[oy] should tell others she was engaged to be married," and a witness's characterization of plaintiff's conduct as an "apparent fixation on 1LT C[oy]."  AR 19.

The Board went on to find that plaintiff failed to demonstrate by a preponderance of the evidence that the Reprimand should be removed.  AR 20.  The Army Regulation 15–6 investigation contained "extensive evidence" that plaintiff had "'showered unwanted attention' on 1LT C[oy]" and that the "unwanted attention was 'excessive, inappropriate, and disruptive.'"  AR 20.  The Board stated that it "must note the significant rank and experiential disparity between a Field Grade officer such as the [plaintiff] and a lieutenant, such as 1LT C[oy]," and further noted that plaintiff was not even in 1LT Coy's chain of command.  AR 20, 21.  To grant the removal request, the Board "would have to discount entirely" 1LT Coy's June 16, 2010 sworn statement to the Army Reg. 15–6 investigating officer, which included:  "how she wished the [plaintiff] would stop 'harassing and stalking [her]'; how the [plaintiff] made her feel 'uncomfortable and unsafe at her workplace'"; and how on one occasion plaintiff drove his car next to her and told her to get in his car "for no apparent mission-related reason."  AR 20.[3]  The Board took note of the fact that 1LT Coy's account of plaintiff's inappropriate behavior was corroborated by others through sworn statements and "conspicuous enough to be noticed by many other military personnel."  AR 21.  Finally, the Board observed that the Reprimand admonished plaintiff "for his behavior, not his motives," and that even if plaintiff's misconduct was due to poor self-awareness rather than

---

3       The Court notes that 1LT Coy's June 16, 2010 statement to the Army Regulation 15–6 investigating officer does not appear in the Administrative Record or any other filings.

"nefarious intentions," a written reprimand was an "appropriate corrective and disciplinary measure in such circumstances."  AR 21.

The Board similarly found that the addendum to plaintiff's OER should not be removed because plaintiff's behavior toward 1LT Coy was "so repetitive and so unrelenting that the greater weight of the evidence suggests his pursuit of her did in fact have sexual connotations."  AR 20. In reaching this conclusion, the Board considered evidence that plaintiff invited 1LT Coy to his private residence for individual training, insisted 1LT Coy ride alone in his personal vehicle for "counseling," and "initiated sexual conversations with her on at least two occasions."  AR 20.  The Board also found that the "sexual nature of the applicant's interactions was evident to others," citing a sworn statement from another officer that people started to question plaintiff's motives for "frequently seeking" 1LT Coy.  AR 20.

In denying plaintiff's requested relief, the Board found Lieutenant General Campbell's change of heart and recommendation to remove the Reprimand unpersuasive based on the factual record.  *See* AR 19–20.   The Board explained that "[i]t is not unusual for retired officers, years after the fact, to feel some sympathy toward Soldiers they previously had disciplined," and that this "often occurs when disciplined officers and soldiers mount a concerted effort to undo the disciplinary action."  AR 19.  However, in this case, the Reprimand issued "was and remains justified" based on the "extensive evidence" in the AR 15–6 investigation.  AR 19.  The Board similarly considered Lieutenant General Mann's recommendations and noted it was "dubious" of his authority to set aside the findings and the Reprimand, finding that the testimonial evidence contained in the Army Regulation 15–6 investigation was more persuasive than Mann's "post hoc actions."  AR 20.  In light of its findings regarding the Reprimand and the OER addendum, the

Board also determined that neither a special selection board to consider promoting plaintiff nor the credit of retirement points was warranted.  AR 22.[4]

## Amended Complaint and Current Litigation

On May 3, 2021, plaintiff filed an amended complaint challenging the Board's decision on Remand.  Am. Compl.  ¶ 1.  He sought "a declaration that the decision of the [ABCMR] denying Plaintiff's requested relief to remove certain adverse and derogatory information from Plaintiff's Official Military Personnel File ("OMPF"); request for consideration of promotion by special selection board(s); and extension of mandatory removal date was an abuse of discretion, arbitrary and capricious and contrary to law or regulation."  Am. Compl.  ¶ 1.  The parties filed cross-motions for summary judgment.  *See* Pl.'s Mot.; Def.'s Mot.  In response to an inquiry posed by the Court in a February 14, 2023 minute order, the parties agreed that the February 7, 2020 decision is the final agency action under review.  *See* Def.'s Suppl. Brief [Dkt. # 50]; Pl.'s Resp. [Dkt. # 51].  The court therefore dismissed the challenge to the ABCMR's October 24, 2017 decision in the original complaint as moot.  *See* February 22, 2023 Minute Order.

## LEGAL STANDARD

### I.     Standard of Review

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action under the Administrative Procedure Act ("APA"), Rule 56 does not apply due to the limited role

---

4       According to the ABCMR's 2020 decision, plaintiff retired on April 30, 2018.  AR 17.  On January 29, 2020, the U.S. Army Reserve Command issued an advisory opinion determining that the lost retirement point request for 1,130 points was unwarranted and that plaintiff's retirement put him in inactive status, ineligible for such points.  AR 17.  On February 5, 2020 plaintiff's counsel responded to the opinion, arguing it was improper and unjust.  AR 17–18.

of a court in reviewing the administrative record. *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011).   Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769–70 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also Richards v. Immigr. & Naturalization Serv.*, 554 F.2d 1173, 1177 n.28 (D.C. Cir. 1977).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or "without observance of procedure required by law," *id.* § 706(2)(D).   However, the scope of review is narrow.   *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).   The agency's decision is presumed to be valid, *see Citizens to Preserve Overton Park*, 401 U.S. at 415, and the court must not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.   A court must be satisfied, though, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (internal citations omitted).

## II.     The Correction of Military Records

Officer Evaluation Reports "are presumed to be 'administratively correct' and to '[r]epresent the considered opinions and objective judgment of the rating officials at the time of preparation.'" *Cone v. Caldera*, 223 F.3d 789, 792 (D.C. Cir. 2000) (alteration in original),

quoting Army Reg. 623–105 ¶ 5–32.  "An officer seeking a correction must prove 'clearly and convincingly' that the 'presumption of regularity' in the preparation of administrative records should not apply, and that '[a]ction is warranted to correct a material error, inaccuracy, or injustice." *Id.* at 792–93, quoting Army Reg. 623–105 ¶ 9–7.

The Secretary of the Army, acting through the Board, "may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); *see also* 32 C.F.R. § 581.3 (describing the function and power of the Board).  "The ABCMR begins its consideration of each case with the presumption of administrative regularity.  The applicant has the burden of proving an error or injustice by a preponderance of the evidence."  32 C.F.R. § 581.3(e)(2); *see also Frizelle v. Slater*, 111 F.3d 172, 177, 179 (D.C. Cir. 1997).

Once the Board has acted, its ruling on a request for correction must receive particular deference from the Court because Congress has accorded the Secretary of the Army wide discretion in deciding when to make corrections to military records.  *See* 10 U.S.C. § 1552(a)(1) ("The Secretary of a military department may correct any military record of the Secretary's department *when the secretary considers it necessary* to correct an error or remove an injustice . . . .  [S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.") (emphasis added).  In the case of Board decisions, the Court must apply "an 'unusually deferential application of the arbitrary or capricious standard' of the APA."  *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014), quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989); *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006); *Cone*, 223 F.3d at 793.

The D.C. Circuit has explained that this high level of deference is warranted "to ensure that the courts do not become a forum for appeals by every [officer] dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Mueller v. Winter*, 485 F.3d 1191, 1198 (D.C. Cir. 2007) (alteration in original). To that end, the army need only show that the Board's decision "minimally contain[s] 'a rational connection between the facts found and the choice made.'" *See Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995), quoting *State Farm*, 463 U.S. at 43. The court must "limit [its] inquiry to whether the 'Secretary's decision making process was deficient, not whether his decision was correct.'" *Roberts*, 741 F.3d at 158, quoting *Kreis*, 866 F.2d at 1511.

## ANALYSIS

**I.     The Board's decision to deny plaintiff's request to remove the Reprimand was reasonable.**

Plaintiff argues that the Board's refusal to remove the Reprimand was arbitrary and capricious because: he was denied timely notice of the Army Regulation 15–6 investigation's amended findings and recommendations; the Board failed to consider his arguments that a "prohibited relationship" under Army Regulation 600–20 ¶ 4–14 requires a "consensual" and "benign" relationship "as perceived by both parties"; and the Board failed to consider the repudiations of the Reprimand by then-retired Lieutenant General Campbell and Lieutenant General Mann. Pl.'s Mot. at 11, 13, 15. The Court finds that these arguments fail to demonstrate that the Board's refusal to remove the Reprimand was arbitrary and capricious and upholds the Agency's decision.

**A. Notice of the Army Regulation 15–6 investigation's findings and recommendations**

Plaintiff complains that the Board erred when it failed to find that he was denied notice of the Army Regulation 15–6 investigation's substituted findings and recommendations and when it concluded that such a denial would have been a harmless error. Pl.'s Mot. at 13–14. Army Regulation 15–6 ¶ 1–9, cited by the Board, AR 3, provides that when an adverse administrative action is contemplated "based upon information obtained as a result of a[n] administrative investigation," the appropriate military authority must: "notify the Soldier, in writing, of the proposed adverse action and provide a copy . . . of those parts of the findings and recommendations of the inquiry, investigation, or board and the supporting evidence gathered during the proceeding upon which the proposed adverse action is based" and "give the Soldier a reasonable opportunity, no less than 10 days, to reply, in writing, and to submit rebuttal matters." Army. Reg. 15–6 ¶ 1–9.

The Board specifically addressed plaintiff's timely notice argument, and after considering plaintiff's case and the evidentiary record, it was "unable to determine whether the applicant was denied timely notice of the substituted finding and recommendations." AR 18. While the parties do not agree on whether plaintiff received the substituted findings and recommendations before he received the Reprimand, *see* Def.'s Mot. at 7 n.7, Pl.'s Mot. at 14, the Court does not need to resolve the dispute. The Board stated that "[e]ven assuming the [plaintiff] was denied proper notice of the substituted findings and recommendations," it found "no material error or injustice" related to the filing of the Reprimand. AR 18. The Court agrees that the Board reasonably determined that even if plaintiff is correct that notice was untimely, any error was harmless because it would not have changed the outcome. AR 18. Plaintiff had a full opportunity to rebut the facts raised in the investigative report, and he addressed all of the salient issues.

21

The APA requires courts reviewing agency action under the "arbitrary and capricious" standard to take "due account" of "the rule of prejudicial error."  5 U.S.C. § 706.  As the D.C. Circuit put it, "[i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration."  *PDK Lab'ys., Inc. v. U.S. Drug Enf't Agency.*, 362 F.3d 786, 799 (D.C. Cir. 2004); *Pittsburgh & Lake Erie R. Co. v. Interstate Com. Comm'n*, 796 F.2d 1534, 1542–43 (D.C. Cir. 1986) (denying petitioner's claims of prejudicial error because it "would not have changed the result").

In explaining its decision, the Board stated that the Reprimand "itself articulates relatively clearly the misconduct for which the applicant was admonished, and the articulated misconduct is mirrored in the many documents and sworn statements that comprised the [Army Regulation] 15-6 Investigation."  AR 18.  The Board noted – and plaintiff concedes – that he received the Army Regulation 15–6 investigation report and supporting materials prior to submitting his rebuttal to the proposed Reprimand, and his rebuttal was part of the record when the Reprimand was issued. AR 14; Pl.'s Mot. at 14.  Even if plaintiff had not yet received Judge Advocate Gardiner's legal review of the Army Regulation 15–6 investigation, the investigation report and supporting materials provided plaintiff with the determination that he "paid excessive unwanted attention to 1LT Sara Coy and as a result, had an adverse impact on her morale and the command's ability to accomplish its mission," which was a "prohibited relation in violation of [Army Regulation] 600-20."  AR 720, 722, 723.

In sum, plaintiff was on notice of the core finding that his conduct toward 1LT Coy – the subject of the report and supporting materials which he received – violated Army Regulation 600–20 ¶ 4–14.  While Judge Gardiner provided substituted findings and recommendations in his legal review, his revisions did not change the nature of the conduct under investigation in a way

that left plaintiff without an opportunity to rebut the allegations. The allegations were not new. Indeed, in the rebuttal plaintiff submitted, he argued that he had never had "any type of personal relationship" with 1LT Coy, an argument he has since continued to advance. AR 1247. Lieutenant Campbell reviewed this rebuttal before filing the Reprimand. AR 1245. Given that plaintiff had a reasonable opportunity for rebuttal, the Board rationally concluded that any failure to notify plaintiff of the substituted findings and recommendations "was, and remains, harmless." AR 18.

### B.  The meaning of "prohibited relationship" under Army Regulation 600–20 ¶ 4–14

Plaintiff also argues that the Board's failure to consider its argument regarding the meaning of a "prohibited relationship" under the relevant regulation was arbitrary and capricious. Pl.'s Mot at 10. Under plaintiff's theory, Army Regulation 600–20 "require[s] that a prohibited relationship be both 'consensual' and 'benign' as perceived by both parties." Pl.'s Mot. at 11.

Army Regulation 600–20 ¶ 4–14 prohibits "relationships" between soldiers of different grades that:

> (1) Compromise, or appear to compromise, the integrity of supervisory authority or the chain of command.
>
> (2) Cause actual or perceived partiality or unfairness.
>
> (3) Involve, or appear to involve, the improper use of grade or rank or position for personal gain.
>
> (4) Are, or are perceived to be, exploitative or coercive in nature.
>
> (5) Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the command to accomplish its mission.

Army Reg. 600–20 ¶ 4–14(b). The provision states that solders of different ranks "must be cognizant that their interactions do not create an actual or clearly predictable perception of undue familiarity between an officer and an enlisted Soldier," *id.*, and it directs commanders "to prevent inappropriate or unprofessional relationships." *Id.* ¶ 4–14(f). Commanders "have a wide range of responses available should inappropriate relationships occur," including issuing reprimands. *Id.*

In rendering its decision, the Board quoted to this definition and found that "the record is replete with evidence establishing that the applicant engaged in, or attempted to engage in, a prohibited relationship" as defined by the statute, explaining that the "key inquiry is whether the documentary and testimonial evidence of the [Army Regulation] 15-6 investigation supports a finding that the [plaintiff] engaged in conduct proscribed by [Army Regulation] 600-20, para. 4-14." AR 19. Defendant argues that the Board's finding is correct and "supported by substantial evidence" establishing that "[p]laintiff's actions constituted an attempt to engage in a prohibited relationship." Def.'s Mot. at 23, 24. The Court agrees with defendant that an attempt to engage in a prohibited relationship falls within the scope of Army Regulation 600–20, and that the Board's finding was therefore reasonable.[5]

"An agency's interpretation of its own regulations will be accepted unless it is plainly wrong." *Gen. Carbon Co., v. Occupational Safety & Health Rev. Comm'n*, 860 F.2d 479, 483 (D.C. Cir. 1988), citing *United States v. Larionoff*, 431 U.S. 864, 872 (1977); *see also Udall v. Tallman*, 380 U.S. 1, 16 (1965) ("When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order."). While plaintiff disputes the Army's interpretation, the Board fully and properly considered plaintiff's argument regarding the prohibited relationship finding and provided an interpretation of its regulation that was not arbitrary or capricious.

First, a plain reading of Army Regulation 600–20 ¶ 4–14 supports finding that plaintiff's conduct toward 1LT Coy constituted an attempt to engage in a "prohibited relationship." Plaintiff

---

5       Defendant solely argues that plaintiff's actions fall within the scope of Army Regulation 600–20, 4–14 because they constituted an attempt to engage in a prohibited relationship. Def.'s Mot. at 20. The Court agrees and therefore need not reach the Board's finding regarding whether plaintiff in fact engaged in a prohibited relationship.

and 1LT Coy were "[s]oldiers of different grades," as plaintiff was a Field Grade officer and 1LT Coy was a lieutenant. *See* Army Reg. 600–20 ¶ 4–14(b); AR 20–21. Even though plaintiff did not fall within 1LT Coy's direct chain of command, the Board found that it "must note the significant rank and experiential disparity" that existed between the two soldiers. AR 20. The Board cited to evidence of the interactions between plaintiff and 1LT Coy that fit squarely within the consequences Army Regulation 600–20 ¶ 4–14 expressly aims to prevent: plaintiff's actions, including his "apparent fixation on 1LT Coy," would have compromised the "integrity of supervisory authority" and demonstrated to other officers "actual or perceived partiality or unfairness"; his orders to tell others that she was engaged and to get in his car could be perceived as "exploitative or coercive in nature"; and plaintiff's "frequent and disruptive" unwanted attention created an adverse impact on the ability of the command to accomplish its mission. AR 19–21 (citing the interactions prohibited under Army Reg. 600–20 ¶ 4–14). The Board cited to the Reprimand's finding that plaintiff's conduct "came to the attention of several Naval [O]fficers who were highly critical of his behavior," demonstrating that the adverse impact of his actions extended beyond the Army to other branches of the U.S. military. AR 13. Given the "ample evidence" in the record, the Board reasonably concluded that plaintiff "engaged in, or attempted to engage in," a prohibited relationship as defined by Army Regulation 600–20 to uphold the Reprimand. AR 19.

Plaintiff insists, though, that evidence of a mere attempt to engage in a relationship does not satisfy the requirements of the regulation because it "prohibits relationships, not interactions." Pl.'s Mot. at 12. This argument ignores the plain text of Army Regulation 600–20 ¶ 4–14, which states that soldiers of different grades "must be cognizant that their *interactions* do not create an actual or clearly predictable perception of undue familiarity between an officer and an enlisted Soldier." Army Reg. 600–20 ¶ 4–14(b) (emphasis added). More important, the Army Court of

Criminal Appeals has already ruled that an attempt to engage in a relationship falls within the scope of the regulation.  The "lesser-included offense of an attempt to violate" the provision has been upheld when it was  "clear from the record [plaintiff] fully intended to enter into a prohibited relationship as envisioned by AR 600–20," paragraph 4–14(b).  *United States v. Huertalopez*, 2017 WL 283276, at *2 (A. Ct. Crim. App. Jan. 19, 2017), *review granted, decision aff'd*, (C.A.A.F. May 9, 2017); *see also United States v. Oramas*, 2007 WL 7271934 (A. Ct. Crim. App. Mar. 29, 2007) ("Appellant's conduct was an effort to form prohibited relationships. His actions went beyond mere preparation and resulted in an attempt to violate [Army Regulation] 600–20.").

Plaintiff's posits that the concept of a lesser included offense does not apply here because he "has not been charged criminally and the discipline was non-punitive in character."  Pl.'s Mot. at 12.  But this theory – which lacks any supporting authority – makes no sense.  If it is permissible to subject someone to criminal sanctions for a lesser included offense that is comprised, but not explicitly set out, in a regulation, why would it be unfair to impose less onerous administrative sanctions on the same basis?  The regulation plainly states that potential consequences for violations of AR 600–20 include "official reprimand" and "nonjudicial punishment."  Army Reg. 600–20 ¶ 4–14(b).  The Board considered and responded to plaintiff's contention, stating that "the fact that a [Reprimand] does not cite to a particular UCMJ punitive article or to a punitive regulation does not undermine its validity. A written reprimand is not punishment."  AR 21 (citing Army Reg. 27–10 ¶ 3–3).

The Board fully and properly considered plaintiff's argument regarding the prohibited relationship finding and provided an interpretation of its regulation that was not arbitrary or capricious.  Applying the appropriate level of deference, the Court finds that the Board's

application of Army regulations and legal authorities and its decision to deny plaintiff's request and uphold the Reprimand was therefore reasonable.

### C.  Subsequent repudiations

Finally, plaintiff contends that the Board's decision was arbitrary and capricious because it failed to consider the letters from then-retired Lieutenant General Campbell and Lieutenant General Mann repudiating the Reprimand.  Pl.'s Mot. at 15.  But the Board addressed them head on.  It found both of the belated letters to be unpersuasive, AR 19–20, its reasoning was sound, and this does not constitute a basis for invalidating the Board's decision.

The Court cannot find that the supportive letters from superior officers created long after the fact – based in part on conversations with the plaintiff himself that were not part of the investigative record – rise to the level of substantial evidence that the Board's determination was infirm.  This conclusion is consistent with the D.C. Circuit's decisions finding that such letters were not dispositive.  *See Musengo v. White*, 286 F.3d 535, 539 (D.C. Cir. 2002) (explaining that officials "may attempt to retract otherwise accurate assessments when requested to do so by their disappointed officers"), citing *Cone*, 223 F.3d at 794 (noting that post hoc statements "often reflect retrospective thinking, or second thoughts, prompted by an appellant's non-selection or other unfavorable personnel action claimed to be the sole result of the contested report," and concluding that such a letter from an officer should be viewed as expressions of "sympathy for the pleas of his subordinates, rather than as accurate statements of his original intent") (internal citations omitted).

The letters that plaintiff submitted are not probative because they reflect the officers' "second thoughts," *Cone*, 223 F.3d at 794, and not their actual conclusions at the time.  The Board adequately responded to plaintiff's reliance on the newly submitted material, finding itself to be unswayed, particularly in light of the "testimonial evidence contained in the AR 15-6

27

investigation."  AR 20.  Given the high level of deference that the Court accords the decisions of the military, the Court concludes that the Board's decision "contain[s] 'a rational connection between the facts found and the choice made'" because it reflects that the Board considered the letters and explained why it found them to be unpersuasive.  *See Dickson*, 68 F.3d at 1404, quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *see also Roberts*, 741 F.3d at 158 (limiting the Court's inquiry to whether the "Secretary's decision making process was deficient, not whether his decision was correct") (internal citations omitted).

For all of these reasons, plaintiff has failed to demonstrate that the Board's refusal to remove the Reprimand in his record was arbitrary and capricious.  Rather, it was well-supported by the material in the record.

## II.    The Board's decision to deny plaintiff's request to remove the evaluation addendum was reasonable.

Plaintiff also argues that the Board's denial of his request to remove the evaluation addendum was arbitrary and capricious.  Pl.'s Mot. at 17–18.  Defendant argues that the Board fully explained this decision and provided a rational connection between the facts found and the choice made, and the Court agrees.  Def.'s Mot. at 28.

The Board explained that the addendum could stand because plaintiff's "behavior relative to 1LT [Coy] was so repetitive and unrelenting that the greater weight of the evidence suggests his pursuit of her did in fact have sexual connotations."  AR 20.  In support of its conclusions, the Board cited all of the evidence in the record of plaintiff's behavior that had sexual connotations, including corroborating statements reflecting that the "sexual nature of the applicant's interactions was evident to others."  AR 20.  The Board's decision also rested on Army Regulations that prescribe the policies for completing and amending evaluation reports.  AR 6–7 (citing Army Regulation 623–3, Evaluation Reporting System, which explains that evaluation reports may be

altered "when information that was unknown or unverified when the report was prepared is brought to light or verified, and the information is so significant that it would have resulted in a higher or lower evaluation had it been known or verified when the report was prepared").

Army Regulation 623–3 provides clear guidance on when an evaluation report may be amended, and the Board provided a rational basis for upholding the addendum based on its consideration of the record.

### III.    The Board's decision to deny plaintiff's request for a Special Selection Board and additional retirement points was reasonable.

Finally, plaintiff alleges that the Board's failure to consider his request for a Special Selection Board and 1,130 additional retirement points was arbitrary and capricious.  Pl.'s Mot. at 19.  The Board found that neither of these requests were warranted in light of its findings regarding the Reprimand and the evaluation addendum.  AR 22.

A Special Selection Board is convened to determine whether an officer should have been selected or considered for a promotion by a promotion board.  *See* 10 U.S.C. §§ 628, 14502.  A federal court may set aside a decision not to convene a Special Selection Board "[i]f a court finds the determination to be arbitrary or capricious, not based on substantial evidence, or otherwise contrary to law[.]"  10 U.S.C. § 14502(h)(1).  In light of the Court's analysis that the Board's decisions regarding the Reprimand and the evaluation addendum were reasonable, the Court finds this decision making also provides a rational basis for the Board's denial of plaintiff's request to convene a Special Selection Board.

While plaintiff argues that he was denied further mobilization – and thus, retirement points – after his Reprimand, the Board found there was "no evidence that confirms the reasons why [plaintiff] had mobilization orders revoked" after the Reprimand.  AR 17.  Even if plaintiff's mobilization orders were revoked due to the Reprimand, he has failed to demonstrate that this

Reprimand was erroneous.  The Board noted that "issuance of a mobilization order does not constitute proof that he would have departed for and completed any tours entitling him to 1,130 retirement points."  AR 17.  Indeed, the Court cannot reverse the Board's decision based on plaintiff's conclusory allegations about his mobilization.

The Board's decision, while brief, was not arbitrary and capricious but "minimally contain[s] 'a rational connection between the facts found and the choice made'" based on its review of the record.  *See Dickson*, 68 F.3d at 1404, quoting *State Farm*, 463 U.S. at 43.  The Court therefore upholds the Board's decision and grants summary judgment in defendant's favor.

## CONCLUSION

For the foregoing reasons, the Court will grant defendant's cross-motion for summary judgment and deny plaintiff's motion for summary judgment.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge


DATE:  March 29, 2023