**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NORTH TEXAS
EQUAL ACCESS FUND, *et al.*,

Plaintiffs,

v.

AMERICA FIRST
LEGAL FOUNDATION,

Defendant.

Civil Action No. 22-0728 (ABJ)

**MEMORANDUM OPINION**

On March 16, 2022, plaintiffs North Texas Equal Access Fund ("TEA Fund") and Lilith Fund for Reproductive Equity ("Lilith Fund") filed a complaint against defendant America First Legal Foundation ("America First") in this court. Compl. [Dkt. # 1]. Plaintiffs are Texas-based reproductive justice organizations that provide "financial, emotional, and logistical support for abortion patients." Compl. ¶¶ 44–45. They allege that America First is unlawfully conspiring and coordinating with others to file lawsuits against them to enforce the Texas Heartbeat Act – otherwise known as "SB8" – which bans abortion at approximately six weeks of pregnancy and authorizes private citizens to sue to enforce the law.[1] Compl. ¶ 1; *see* Compl. ¶¶ 110–25; Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) ("Texas Heartbeat Act"). Plaintiffs claim that "[a]n SB8 claim cannot constitutionally be brought in any court," because the law's enforcement structure violates the U.S. Constitution and is preempted by federal law. Compl. ¶ 96; *see* Compl. ¶¶ 95–

1 Since this case was initiated, the Supreme Court overturned *Roe v. Wade*, 410 U.S. 113 (1973), in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. __, 142 S. Ct. 2228 (2022). Subsequently, performing an abortion at any point of pregnancy became a felony in Texas. *See* TEX. HEALTH & SAFETY CODE § 170A.002(a)–(b) (West 2023). SB8 appears to still be in effect.

109. They also claim that SB8, and America First's threats to enforce the law against them, violate their constitutional due process rights, Compl. ¶¶ 54–80; their equal protection rights, Compl. ¶¶ 81–85; and their First Amendment rights, Compl. ¶¶ 86–94.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), America First moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction. Mot. to Dismiss for Lack of Subject-Matter Jurisdiction [Dkt. # 29] ("Mot.") at 1. The motion is fully briefed, *see* Pl.'s Mem. of P. & A. in Opp. to Mot. [Dkt. # 31] ("Opp."); Reply Br. in Supp. of Mot. [Dkt. # 34] ("Reply"); the Court held a hearing on September 20, 2023; and the parties have provided supplemental submissions. Notice of Filing of Suppl. Materials in Supp. of Opp. [Dkt. # 38]; Joint Notice to the Ct. Regarding Other Cases Involving Challenges to Senate Bill 8 [Dkt. # 39] ("Joint Notice"). After full consideration of all the materials, the Court will **GRANT** the motion since plaintiffs have failed to establish the necessary causal connection between the defendant's conduct and their alleged actual or imminent injuries. This opinion should not be read to express any point of view

with respect to the merits of plaintiffs' constitutional objections to SB8; the Court simply lacks authority to reach them in this action.[2]

## BACKGROUND

### I. SB8: The Texas Heartbeat Act

SB8 was signed into law on May 19, 2021, and became effective on September 1, 2021. Compl. ¶¶ 18, 25; Ex. A to Compl. [Dkt. #1-1] (exhibit showing SB8's enacted text). The law prohibits a physician from "knowingly perform[ing] or induc[ing] an abortion on a pregnant woman if the physician detected a fetal heartbeat for the unborn child . . . or failed to perform a

---

2 On April 8, 2022, defendant filed a consent motion seeking to file its answer or to otherwise respond to the complaint by April 22, 2022. Consent Mot. to Extend Time to File Answer or Mot. to Dismiss [Dkt. # 15]. The Court granted the motion and extended the answer deadline until April 22, 2022. *See* Min. Order (Apr. 8, 2022). But then a week before the deadline, on April 15, 2022, plaintiffs filed a motion for summary judgment. Pls.' Mot. for Summ. J. [Dkt. # 21]. In response, defendant filed a "motion to defer considering" the motion for summary judgment until after the Court ruled on defendant's forthcoming 12(b)(1) motion. Mot. to Defer Considering or Summarily Deny the Pls.' Mot. for Summ. J. [Dkt. # 23].

In an April 19, 2022 Minute Order, the Court deferred further briefing on both of the motions pending resolution of the motion to dismiss. Min. Order (Apr. 19, 2022) (internal citations omitted).

After defendant filed its motion, the Court set deadlines for the opposition and reply, and ordered plaintiffs to "address whether this action is moot if, as stated in the motion, the Texas petitioners Weldon and Maxwell are no longer represented by defendant [America First] in connection with the litigation and discovery plaintiffs are asking this Court to enjoin." Min. Order (Apr. 29, 2022). It also ordered defendant to "provide any documentation reflecting the withdrawal of [America First or its lawyers] from the representation of Weldon or Maxwell in the pending Rule 202 petitions." *Id.*

Because the Court is granting the motion to dismiss for lack of subject matter jurisdiction, both the motion for summary judgment at Dkt. # 21 and the motion to defer considering the motion for summary judgment will be **DENIED AS MOOT**.

test to detect a fetal heartbeat." TEX. HEALTH & SAFETY CODE § 171.204(a).[3] In addition, the Texas statute provides:

> Any person, other than an officer or employee of a state or local governmental entity in this state, may bring a civil action against any person who: (1) performs or induces an abortion in violation of this subchapter; (2) knowingly engages in conduct that aids or abets[4] the performance or inducement of an abortion, including paying for or reimbursing the costs of an abortion through insurance or otherwise . . . ; or (3) intends to engage in the conduct described by Subdivision (1) or (2).

*Id.* § 171.208(a).

If an SB8 claimant prevails, "the court shall award: (1) injunctive relief sufficient to prevent the defendant from violating this subchapter or engaging in acts that aid or abet violations of this subchapter; (2) statutory damages in an amount of not less than $10,000 for each abortion that the defendant performed or induced in violation of this subchapter, and for each abortion performed or induced in violation of this subchapter that the defendant aided or abetted; and (3) costs and attorney's fees." *Id.*§ 171.208(b).

Notably, the state may not enforce SB8 itself. *See id.* § 171.207(a) ("[T]he requirements of this subchapter shall be enforced exclusively through the private civil actions described in Section 171.208. No enforcement of this subchapter . . . may be taken or threated by this state, a political subdivision, a district or county attorney, or an executive or administrative officer or employer of this state or a political subdivision against any person . . . ."); *see also* Compl. ¶ 22.

---

3 "Fetal heartbeat" is defined as "cardiac activity or the steady and repetitive rhythmic contraction of the fetal heart within the gestational sac." TEX. HEALTH & SAFETY CODE § 171.201(1). "Unborn child" is defined as "a human fetus or embryo in any stage of gestation from fertilization until birth." *Id.* § 171.201(7). Plaintiffs allege that these definitions serve to "effectively ban[] abortion at approximately six weeks of pregnancy." Compl. ¶ 19.

4 "Aids or abets" is not defined in the statute. *See* TEX. HEALTH & SAFETY CODE § 171.201 (definitions section). Plaintiffs contend that therefore, the term "could reach any conduct or speech found to relate to an abortion." Compl. ¶ 20.

Plaintiffs maintain that the intent behind the private enforcement scheme "was to attempt to prevent anyone from suing government officials for an injunction to block the law before it took effect," and that the law "was purposefully designed to try to insulate it from judicial review." Compl. ¶ 24.

## II. Facts of this Case

Under Texas Rule of Civil Procedure 202, a person "may petition the court for an order authorizing the taking of a deposition on oral examination or written questions . . . to investigate a potential claim or suit." Tex. R. Civ. P. 202.1(b). The two plaintiffs, reproductive rights organizations, allege that America First provided legal representation to two individuals who filed separate Rule 202 petitions to investigate potential claims under SB8, in which they sought to depose the Executive Directors of each of the plaintiff organizations. Compl. ¶¶ 27–43. Sadie Weldon, represented by a number of attorneys, including an America First-affiliated lawyer, filed an action in the 271st Judicial District Court of Jack County, Texas that sought to take a pre-suit deposition of Neesha Davé, the Deputy Director of the Lilith Fund. Compl. ¶ 27; Jan. 26, 2022 Rule 202 Petition of Sadie Weldon, Ex. B to Compl. [Dkt. # 1-2] ("Weldon Petition") at 10 (submitted by, *inter alia*, counsel Gene P. Hamilton, Vice-President and General Counsel of America First). The petition stated:

> Ms. Weldon seeks to depose Neesha Davé. . . . This petition is filed in anticipation of possible future civil actions brought under section 171.208 of the Texas Health and Safety Code, against individuals and organizations that performed or aided or abetted abortions in violation of the Texas Heartbeat Act, also known as Senate Bill 8 or SB 8.

Weldon Petition ¶¶ 2, 5.

A second individual, Ashley Maxwell, represented by a group of lawyers including one affiliated with America First, brought an action in the 431st Judicial District Court of Denton

County, Texas that sought to depose Kamyon Conner, the Executive Director of the TEA Fund. Compl. ¶ 27; Feb. 2, 2022 Rule 202 Petition of Ashley Maxwell, Ex. C to Compl. [Dkt. # 1-3] ("Maxwell Petition") at 10 (submitted by, *inter alia*, counsel Gene P. Hamilton). The petition said:

> Ms. Maxwell seeks to depose Kamyon Conner. . . . This petition is filed to investigate the possibilities for future civil actions brought under section 171.208 of the Texas Health and Safety Code, against individuals and organizations that performed or aided or abetted abortions in violation of the Texas Heartbeat Act, also known as Senate Bill 8 or SB 8.

Maxwell Petition ¶¶ 2, 5.[5]

The Weldon and Maxwell petitions based their requests for "pre-suit investigatory deposition[s] on testimony given in the Texas Heartbeat Act Multi-District Litigation[6] pretrial court by Davé and Conner." Compl. ¶ 31. The complaint lists the multiple categories of information sought in the petition:

> all non-privileged documents related to each Plaintiff's role in supporting, funding, and facilitating abortions provided in violation of the Texas Heartbeat Act [SB 8]; and the identi[t]y of all individuals or entities that the Plaintiff collaborated with in providing these illegal abortions; the number of post-heartbeat abortions provided in Texas since September 1, 2021; and the sources of financial support for Plaintiff's abortion-assistance activities.

Compl. ¶ 32 (internal alterations and quotation marks omitted).

According to the complaint, America First "has taken direct responsibility for the filing of both the Maxwell and the Weldon Petitions." Compl. ¶ 34; *see* Compl. ¶¶ 35–39 (alleging that America First published a press release about serving the Maxwell and Weldon petitions, and

---

5 Plaintiffs also attached the petitions to their opposition to the motion for summary judgment. *See* Ex. A-1 to Opp. [Dkt. # 31-2] (Weldon); Ex. A-2 to Opp. [Dkt. # 31-3] (Maxwell).

6 *See* Compl. ¶ 31, citing *In re Texas Heartbeat Act Litig. MDL* cases, *Van Stean v. Texas Right to Life*, Cause No. D-1-GN-21-004179.

posted an article on its Facebook account that reported on its involvement in the petitions).[7] Therefore, plaintiffs maintain that they are "presently being targeted by [America First] for lawsuits under SB8, wherein Plaintiffs' ability to defend themselves and their staff, volunteers, and donors both factually and legally are impaired by SB8's civil enforcement mechanism provisions." Compl. ¶ 51. They assert that their rights "to freely speak, associate, petition, work, and access the courts are substantially burdened by SB8 and [America First]'s public and ongoing threats to enforce SB8 against [them]." Compl. ¶ 52. *See also* Compl. ¶ 28 ("The Rule 202 Petitions represent clear threats of imminent SB8 enforcement lawsuits that are attributable not only to the petitioners in those actions, but also to AFLF."). Plaintiffs also allege that "the threat of unmitigated potential civil liability to Plaintiffs is imminent because citizen bounty hunters like

---

7 The TEA Fund and Lilith Fund attached a February 14, 2022 America First press release as Exhibit D to the complaint, [Dkt. # 1-4], and Exhibit A-3 to their opposition to the motion for summary judgment, [Dkt. # 31-4]. The press release said:

> America First Legal has filed petitions against two abortion funds in Texas that have admitted to paying for abortions in violation of the Texas Heartbeat Act. Last week, AFL served papers on Neesha Davé, the Deputy Director of the Lilith Fund for Reproductive Equity, and Kamyon Conner, the Executive Director of the Texas Equal Access Fund, after each of them admitted in court that their organizations had paid for an abortion of an unborn child that had a detectable heartbeat.
>
> . . . .
>
> America First Legal is seeking to take depositions of Davé and Conner to determine which individuals are subject to civil liability and criminal prosecution for paying these illegal abortions, which will include employees, volunteers, and donors of the Lilith Fund and the Texas Equal Access Fund.

Plaintiffs also attached a screenshot of an America First Facebook post that linked to the press release as Exhibit E to the complaint, [Dkt. # 1-5], and as Exhibit A-4 to their opposition to the motion for summary judgment. [Dkt. # 31-5]. They also appended to their complaint an exhibit showing that America First tweeted a link to the same press release on March 2, 2022. Ex. F to Compl. [Dkt. # 1-6].

[America First] and those with whom [America First] is presently working are publicly organizing to file lawsuits under SB8." Compl. ¶ 53.

The complaint consists of five claims:

> Claim I: SB8, and America First's threats to enforce it, violate plaintiffs' rights under the due process clause, Compl. ¶¶ 54–80;
>
> Claim II: SB8, and America First's threats to enforce it, violate plaintiffs' rights to equal protection under the law, Compl. ¶¶ 81–85;
>
> Claim III: SB8, and America First's threats to enforce it, violate plaintiffs' First Amendment rights to free speech, Compl. ¶¶ 86–94;
>
> Claim IV: SB8 claims cannot be constitutionally brought in either federal or state court, so the statute's attempts to confer jurisdiction are invalid, and American First lacks constitutional standing to bring actions against plaintiffs, Compl. ¶¶ 95–102; and
>
> Claim V: SB8's provisions violate principles of federalism, Compl. ¶¶ 103–09.

Plaintiffs seek to enjoin America First from filing, or coordinating with others to file, actions against them under SB8, and they seek a declaratory judgment that SB8 and a number of its provisions are unconstitutional. Compl. ¶ 6.

On April 22, 2022, America First moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Mot.; *see also* Reply. It argues that plaintiffs lack standing to bring this action and that the matter is now moot. Mot. at 6–8. In particular, America First asserts:

> First, the injuries that the plaintiffs allege are not "fairly traceable" to the conduct of America First Legal.
>
> Second, the injuries that the plaintiffs allege are not traceable to "allegedly unlawful conduct" of America First Legal.

> Third, the injuries that the plaintiffs allege are not "likely" to be redressed by declaratory or injunctive relief against America First Legal.
>
> Fourth, any case or controversy that might have existed between the plaintiffs and the defendant is moot because Ms. Maxwell and Ms. Weldon have terminated America First Legal as their legal representative in the Rule 202 proceedings and will not retain them in any future legal action.

Mot. at 1 (internal citations omitted). Moreover, America First insists that there is no danger that it will file the SB8 actions the complaint seeks to forestall.

In support of its motion, America First attached a declaration from Gene P. Hamilton, the Vice-President and General Counsel of America First. Decl. of Gene P. Hamilton [Dkt. # 29-5] ("Hamilton Decl."). In it, he averred that America First agreed to serve as co-counsel on Maxwell and Weldon's Rule 202 petitions after it learned that they wished to file the petitions, and that it "did not in any way advise or encourage them to initiate these proceedings." *Id.* ¶ 6. Since then, he stated, both Weldon and Maxwell terminated America First as their representatives in all pending litigation involving the plaintiffs, and America First is "no longer serving as counsel in the Rule 202 proceedings involving Ms. Conner and Ms. Davé." *Id.* ¶¶ 7–11. He also said:

> "America First Legal does not have any clients that have any intention of filing Rule 202 petitions or private civil-enforcement lawsuits against the [plaintiffs], or anyone affiliated with those organizations." *Id.* ¶ 12.
>
> "America First Legal has no intention of representing other individuals who file Rule 202 petitions against the [plaintiffs], or anyone affiliated with those organizations, because there is no need to bring Rule 202 petitions redundant to those already filed by Ms. Maxwell and Ms. Weldon." *Id.* ¶ 13.
>
> "America First Legal has no intention of suing [plaintiffs], or anyone else under the private right of action established in Texas's Senate Bill 8." *Id.* ¶ 14.
>
> "America First Legal also has no intention, and has never had any intention, of providing legal representation to plaintiffs who file private civil-enforcement lawsuits under SB 8 against [plaintiffs], either before or after

> the Supreme Court overrules *Roe v. Wade*. . . . A Rule 202 petition is not a lawsuit." *Id.* ¶¶ 16, 20.[8]

Hamilton appended letters from Maxwell and Weldon to his declaration. The letters were identical: "I will not be retaining the America First Legal Foundation or its attorneys to serve as my representative in any future litigation or legal matter. Thank you for your representation of me." Letter from Sadie Weldon to Gene P. Hamilton (Apr. 5, 2022), Ex. A to Hamilton Decl. [Dkt. # 29-5] ("Weldon Termination Letter"); Letter from Ashley Maxwell to Gene P. Hamilton, (Apr. 6, 2022), Ex. B to Hamilton Decl. [Dkt. # 29-5] ("Maxwell Termination Letter").[9]

On September 20, 2023, the Court held a hearing on the motion to dismiss. *See* Min. Entry (Sept. 20, 2023). Thereafter, plaintiffs supplemented their opposition with a deposition of Weldon

---

8 In a supplemental declaration dated May 20, 2022, Hamilton explained:

> America First Legal has no interest—and never had any interest—in suing the North Texas Equal Access Fund or the Lilith Fund for Reproductive Equity (or anyone else) under SB 8's private civil-enforcement mechanism. That is because we are expecting the Supreme Court to overrule *Roe v. Wade*, 410 U.S. 113 (1973), when it announces its ruling in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, which will immediately criminalize abortion throughout Texas and eliminate any need to enforce the state's abortion laws through private civil lawsuits. And I will not allow America First Legal to represent plaintiffs who file SB 8 enforcement lawsuits before the Supreme Court overrules *Roe v. Wade*, because lawsuits of that sort would provide the state judiciary and subsequent appellate courts with an opportunity to pronounce SB 8 unconstitutional . . . .

Suppl. Decl. of Gene P. Hamilton [Dkt. # 34-1] ¶ 7.

9 Defendant also submitted identical declarations from Maxwell and Weldon. Decl. of Ashley Maxwell [Dkt. # 29-6] ("Maxwell Decl."); Decl. of Sadie Weldon [Dkt. # 29-7] ("Weldon Decl."). Each stated that America First "did not in any way advise or encourage me to initiate these Rule 202 proceedings," Maxwell Decl. ¶ 5; Weldon Decl. ¶ 5, that "I will not be retaining America First Legal or its attorneys to serve as my representative in any future litigation or legal matter," Maxwell Decl. ¶ 7; Weldon Decl. ¶ 7, and that "[n]o one at America First Legal asked me to terminate them as my representative, and they did not suggest or insinuate that I should do so." Maxwell Decl. ¶ 8; Weldon Decl. ¶ 8.

that was taken in connection with the legal proceedings against the Lilith Fund in the 271st District Court of Jack County, Texas. Dep. of Sadie Weldon, Ex. A to Notice of Filing of Suppl. Material in Supp. of Opp. [Dkt. # 38-1] ("Weldon Dep."). The parties also filed a joint notice informing the Court of the status of other pending SB8-related litigation. Joint Notice.

**LEGAL STANDARD**

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as

well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**ANALYSIS**

"To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011); *Lujan*, 504 U.S. at 561. Standing is a necessary predicate to any exercise of federal jurisdiction; if it is lacking, then the dispute is not a proper case or controversy under the constitution, and federal courts have no subject matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). A plaintiff must demonstrate standing for each claim it asserts. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 185 (2000).

To establish constitutional standing, a plaintiff must show: (1) that it has suffered a concrete, particularized, and actual or imminent "injury-in-fact"; (2) that the injury is "fairly traceable" to the challenged action of the defendant; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61;

*see also Laidlaw Env't. Servs.*, 528 U.S. at 180-81. The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561.

**A. Actual or Imminent Injury in Fact**

To show injury in fact, a plaintiff must demonstrate that it "suffered an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), quoting *Lujan*, 504 U.S. at 560 (internal quotation marks omitted); *see also Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. 2007), quoting *Lujan*, 504 U.S. at 560 (the injury must be "certainly impending and immediate – not remote, speculative, conjectural, or hypothetical").

Plaintiffs have alleged that defendant threatened to file and helped others to file court proceedings to enforce a Texas anti-abortion law which would expose them to strict liability. Compl. ¶ 1. According to the complaint, "potential and threatened enforcement of SB8" by America First has already led to increased funding and operational costs for both plaintiff organizations, and "having to defend even a single SB8 lawsuit . . . exposes each Plaintiff to over $75,000 in financial risk . . . ." Compl. ¶ 26; *see* Compl. ¶ 25.

Defendant does not contend that plaintiffs have failed to demonstrate an injury; it merely suggests that the injury is self-inflicted. *See* Mot. at 9 ("The plaintiffs are unquestionably suffering injury in fact because their violations of Texas's abortion laws have exposed them to the possibility of private civil-enforcement lawsuits under SB 8 and potential criminal prosecution under article 4512.2".); *see also* Reply at 6 ("The plaintiffs are assuredly suffering injury [in] fact because they cannot assist post-heartbeat abortions without exposing themselves to civil liability and criminal prosecution.").

Plaintiffs have established the first necessary element of a concrete, and actual or imminent injury in fact.

**B. Causation**

The second element of standing is that "there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560, quoting *Simon v. Eastern Ky. Welfare Rights* Organization, 426 U.S. 26, 41–42 (1976) (alterations in original).

Causation is "substantially more difficult to establish" when a plaintiff's alleged injury is directly caused by a third party who is not before the court. *See Lujan*, 504 U.S. at 562 ("When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed.") (emphasis in original). A defendant need not be the "but-for" cause of a plaintiff's injuries at the hands of a third party. *See Massachusetts v. EPA*, 549 U.S. 497, 524 (2007) (causation may be established when defendant caused an "incremental" part of plaintiff's alleged injury), and *Cmty. for Creative Non–Violence v. Pierce*, 814 F.2d 663, 669 (D.C. Cir. 1987) (causation may be established when a defendant's actions are "a substantial factor motivating the third parties' actions"). But it must be "substantially probable that the challenged acts of the defendant, not of some absent third party," have led to a plaintiff's injury. *Florida Audobon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (internal citations omitted). *See also Am. Freedom L. Ctr. v. Obama*, 821 F.3d 44, 48–49 (D.C. Cir. 2016) ("When the existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, it becomes

substantially more difficult to establish standing.") (internal brackets and quotation marks omitted).

Plaintiffs maintain that they have been and will be injured by America First because the organization "has repeatedly and publicly stated" that it is committed to "defending the validity of SB8, it has threatened to enforce SB8 against Plaintiffs (and others), and it has already filed court actions against Plaintiffs in an effort to discover information about Plaintiffs that would support enforcement actions against Plaintiffs under SB8." Opp. at 14, citing Compl. ¶¶ 27–40, 51–53. There is no question that America First took credit for filing the petitions and touted its role in supporting SB8 in its promotional materials. *See* Exs. D–F to Compl. [Dkt. #s 1-4–1-7]. But the injuries alleged in the complaint arose from the petitions filed by Weldon and Maxwell. *See* Compl. ¶¶ 27–32. America First did not file the petitions on its own behalf, and any statements it made in support of the petitions or in support of SB8, *see* Compl. ¶¶ 35–40, do not change that fact.

Throughout the complaint, and at the motions hearing, plaintiffs insisted that AFLF was the initiating force behind the Weldon and Maxwell Rule 202 petitions, and that it was poised to launch SB8 suits against them. Compl. ¶¶ 1, 5, 8, 10, 26, 28, 51, 53. They pointed to an August 22, 2022 deposition of Weldon, taken in connection with the Rule 202 proceedings in Texas state court, as evidence of America First's machinations. *See* Weldon Dep. But Weldon's deposition does not establish that it was America First that instructed or prompted her to file the Rule 202 petition.[10]

---

10 The following exchange occurred during Weldon's deposition:

> Q: . . . Why did you decide to file the document that's been marked as Exhibit 2?
>
> A: So the Texas Heartbeat law would be upheld.

Weldon testified that she called a good friend, "someone who could explain the law to me," after she became aware of a potential violation of SB 8. Weldon Dep. at 28:12–17, 29:9–11. She called "[i]mmediately" and "asked . . . about the Texas Heartbeat law, that I had saw that it had been broken, what can be done about it." *Id.* at 31:22, 34:17–18. After that conversation, which she initiated, an attorney – whose name she did not recall – contacted her about filing the Rule 202 petition. *Id.* at 36:2–37:12. She testified that she did "[n]ot completely" understand that her filing requested documents from the Lilith Fund and sought to take Davé's deposition, but she was adamant that she "wanted the Texas Heartbeat law upheld." *Id.* at 40:12, 40:22, 42:20. She also stated that she was connected with Jonathan Mitchell, who is outside counsel for America First in this action and was the lead attorney listed on the petition, "because I pursued this, and somewhere down the line he was referred to me." *Id.* at 75:17–18; *see id.* at 122:3–20 (Q: "Did anybody else encourage you to file the Rule 202 proceedings?"; A: "Not to my knowledge."). While her deposition does reveal considerable confusion about her legal representation, the genesis of her letter terminating America First as counsel, and the declaration describing that process, *see id.* at 118:21–127:19; *see also* Weldon Decl., it does not show that America First took any action to initiate the Rule 202 proceeding brought in her name.

---

Q: How did you decide that you needed to file exhibit 2 for the Texas Heartbeat Act to be upheld?

* * *

A: Somebody needed to.
Q: When did you decide that you wanted to file what's been marked as Exhibit 2 to your deposition?
A: When I found out I legally could.
Q: When – When did you find out you legally could do that?
A: I called someone who could explain the law to me.

Weldon Dep. at 28:4–17.

There is no dispute that at least one lawyer associated with America First represented individuals who filed Rule 202 petitions to uncover information that may potentially have subjected the leaders of the plaintiff organizations to liability under SB8. *See* Compl. ¶¶ 27–28; Mot. at 5; Opp. at 3. But that representation – and publicizing that representation – does not amount to America First's serving as a "private" or "would-be" enforcer of the law. Therefore, the plaintiffs are unable to demonstrate that the defendant is the entity that caused any past injuries they suffered by virtue of the Rule 202 proceedings.

In any event, Rule 202 petitions are not really what this is about. Plaintiffs' core allegation is that America First is poised to launch SB8 actions against them, which would cause them future harm. But there is little in the record to support this allegation.

The defense has provided a declaration indicating that the organization did not and does not intend to file SB8 lawsuits:

> America First Legal has no intention of suing the North Texas Equal Access Fund, the Lilith Fund for Reproductive Equity, or anyone else under the private right of action established in Texas's Senate Bill 8.

Hamilton Decl. ¶ 14. Defendant points to the Supreme Court's finding in its decision in *Whole Women's Health v. Jackson*, 142 S. Ct. 522 (2021), that those plaintiffs lacked standing to sue a private individual who had supplied a sworn declaration attesting that he had no intention to file an SB8 action against them. *Id.* at 537 ("Accordingly, on the record before us the petitioners cannot establish 'personal injury fairly traceable to [Mr. Dickson's] allegedly unlawful conduct.'"). In the Court's view, defendant may be giving this abbreviated discussion too much weight, since in that case, the petitioners did not dispute the declaration. But it is a statement that binds any lower court faced with an uncontradicted declaration. And here, while plaintiffs were understandably skeptical of Hamilton's representations given the organization's public relations

effort to fill its coffers by linking itself with the implementation and enforcement of SB8, Opp. at 19–20, the fact is that plaintiffs bear the burden of establishing jurisdiction, and they have not come forward with evidence to connect the defendant to the alleged risk of impending future harm.[11] For all of these reasons, plaintiffs have not shown that they have standing to pursue their claims against the defendant, and the case must be dismissed for lack of jurisdiction. Given the Court's conclusion on causation, it need not analyze whether it is likely that plaintiffs' injury will be redressed by a favorable decision or whether the matter is moot.

At the end of the day, even a cursory review reveals that the thrust of the complaint is that SB8 raises profound constitutional concerns, and that it is the source of any risk to plaintiffs in the future at the hands of America First or any similar organization. Thus, plaintiff's primary argument in opposition to the motion to dismiss was that it was incumbent upon this Court to reach the issue, because SB8 had been deliberately structured so that it would be impossible to challenge its constitutionality through any other means. *See* Opp. at 22. But information provided in plaintiffs' own complaint, *see* Compl. ¶ 41 and Ex. K to Compl. [Dkt. # 1-11], and the supplemental material jointly submitted to the Court by the parties after the hearing, *see* Joint Notice, reflects that plaintiffs and others can and did avail themselves of other avenues for redress,

11 It is telling that no such action has been filed by America First in the more than a year since the declaration was filed. Also, during the hearing, counsel for America First represented that given the Supreme Court's decision in *Dobbs*, which was handed down after this lawsuit was filed, there is no longer a need to file SB8 actions in Texas, because the state has outlawed abortions completely and no physicians are performing them in within its borders. *See* Rough Tr. (Sep. 20, 2023) at 35:14–18 (America First is not filing lawsuits "[b]ecause abortion has been completely outlawed in Texas after *Dobbs*. So no one is violating SB-8. There are no more abortion providers who are providing abortion services in the state of Texas. SB-8 only applies to abortions performed by a Texas-licensed physician.").

including direct actions against the Rule 202 petitioners and a multi-district proceeding in Texas state court, in which the presiding judge declared SB8 to be unconstitutional.[12]

## CONCLUSION

Because plaintiffs have failed to establish the causation element of standing, the Court will **GRANT** defendant's motion to dismiss for lack of subject matter jurisdiction.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: October 24, 2023

12 After Weldon filed her petition, the Lilith Fund sued her in Texas state court and sought a declaration that SB8 is unconstitutional. Joint Notice at 2–3, citing *Lilith Fund v. Weldon*, No. 22-03-032 (Jack County, Texas). And following Maxwell's petition, the TEA Fund sued her in Texas state court and also sought a declaration that SB8 is unconstitutional. *Id.* at 3–4, citing *North Texas Equal Access Fund v. Maxwell*, No. 22-2100-431 (Denton County, Texas). Both those cases are ongoing. Other courts are also considering the question of SB8's constitutionality. *See* Joint Notice at 2–5.